[Nos. 21636-1-II; 22763-1-II.   Division Two.   January 22, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT L. DAVIS, *Appellant*.

*E. Allen Walker* of *Walker Bradshaw, P.S.*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for respondent.

HUNT, J. — Robert L. Davis appeals his multiple jury convictions for delivery of cocaine, possession of methamphetamine, and unlawful possession of a firearm, on grounds of prosecutorial misconduct, evidentiary errors, and violation of due process. He received consecutive enhanced sentences because he possessed and delivered drugs within 1000 feet of a school bus stop and his criminal conduct involved firearms. Davis also appeals the trial court's denial of his motion for relief from judgment. The

State having conceded that Davis' firearm sentence enhancements should run concurrently with one another, rather than consecutively, we affirm the convictions but remand for resentencing.

## FACTS

Christine Moore became a confidential informant for the Bremerton police, who, in return, agreed to quash several outstanding arrest warrants. She identified Robert Davis as a possible drug dealer and made three controlled buys from him at a private residence, which was 588 feet from a designated school bus stop.[1]

On October 22, 23, and 29, 1997, Moore went to the residence and in an upstairs bedroom, bought drugs from Davis in the presence of his girl friend, Cindy Morris. Davis had a pistol which he laid on the bed during each drug transaction.

On November 6, 1997, police served a search warrant at the residence: Davis and Morris were in the living room; Nichol Nichols was in the first floor bedroom; Gregg Davis was in the basement. Police found: drug paraphernalia, such as syringes and cooking spoons used to prepare drugs for ingestion; a cutting agent, used to dilute cocaine for sale; and, in Morris' bedroom, a loaded sawed-off .22 caliber rifle, a semiautomatic .25 caliber pistol, two pagers, a baggy containing a white substance, and more drug paraphernalia. Davis had a large sum of cash in his pockets, but no drugs.

Davis was charged with three counts of delivery of cocaine; one count of possession of methamphetamine; and six counts of unlawful possession of a firearm. He also faced multiple sentencing enhancements for the firearms and for drug sales near a school bus stop.

---

[1]The residence was located at 201 South Lafayette, Bremerton, Washington. The primary residents of the house were John Skirving, Bob Haine, Larry McClain, Nichol Nichols, and Cindy Morris, who was Davis' girl friend. Davis did not live there, but he stayed there intermittently with Morris. Crack cocaine was sold and consumed regularly on the premises; Skirving, McClain and Nichols consumed drugs regularly on the premises during October 1997.

On January 3, 1997, three days before trial, a different confidential informant purchased methamphetamine from another seller at the same residence where Davis had been arrested the preceding November. The informant knew the seller as "Nichol," a local prostitute, and described her as about 19 years old, 5'7" to 5'8" tall, with blonde hair. On March 21, 1997, the police showed the confidential informant a photo montage, from which the informant identified Nichol Nichols as the drug seller on January 3, 1997. The State did not disclose this information to Davis, either before or during trial. On April 22, 1997, Nichols was charged with a drug violation.

On January 6, 1997, the trial court heard pretrial motions in Davis' case. The jury trial began on January 7, 1997, the same day that Moore was arrested for possession of methamphetamine. On January 9, 1997, she testified at Davis' trial. On cross-examination, Davis elicited from Moore that she had been convicted of theft, had several warrants out for her arrest, and had used cocaine several times during the investigation of Davis.

Just before closing arguments, Davis discovered that Moore had been arrested on January 7. He moved for a mistrial or to reopen questioning of Moore, based on the prosecutor's failure to disclose Moore's recent arrest. The court denied Davis' motion, stating the information was inadmissible to impeach Moore's testimony.

On January 13, 1997, Davis was convicted. He filed a motion to arrest judgment based on insufficient evidence, which the trial court denied. On February 2, 1997, the court sentenced Davis to 17 years of total confinement: On counts I, III, and V, the court sentenced Davis to the upper end of the standard range, 144 months, then added a 36-month firearm enhancement to run consecutively with a 24-month school bus zone enhancement, for a total confinement of 204 months, or 17 years in prison.

Davis appealed his conviction and sentence. The State cross-appealed. The judgment and sentence was amended to conform with RCW 9.94A.310(3)(e), the "hard time for

armed crime" act, and the State's cross appeal was dismissed.[2]

On July 30, 1997, while his appeal was pending, Davis filed a motion for relief from judgment under CrR 7.8(b)(3), based on the State's failure to disclose the investigation and arrest of Nichols. The State filed a motion to strike the supporting evidence as inadmissible for purposes of a CrR 7.8 motion. On November 19, 1997, the trial court denied Davis' motion for relief from judgment, and Davis appealed a second time. We consolidated the two appeals.

ANALYSIS
Issues Raised by Davis
Sentence Enhancement for Drug Sales Within 1000 Feet of School Bus Stop

RCW 69.50.435(a) prescribes an enhanced penalty for persons selling drugs within 1000 feet of a school bus stop. RCW 69.50.435(f)(3) defines "school bus stop" as any stop designated by a school district.

■ The Bremerton School District contracted with Kitsap Transit to supply school transportation on its regular public buses, which do not look like typical yellow school buses. The Bremerton School District had designated as a school bus stop, a Kitsap Transit stop that was 588 feet from the residence in which Davis was dealing drugs; the stop's coordinates were provided to the superintendent of public instruction. Davis claims that because there is no fair way to know that this public transit stop is also a school bus stop, his sentence enhancement under RCW 69.50.435 violated due process. We disagree.

_____

[2]RCW 9.94A.310(3)(e) mandates that all firearm enhancements be served concurrently. The trial court added a firearm enhancement to counts I, III, and V, but then allowed those sentences to run consecutively. The judgment and sentence was amended to allow the firearm enhancements, totaling 108 months, to run concurrently with the other sentencing provisions. Thus, Davis' sentence was amended upwards from 204 months to 240 months. The State concedes that this matter should be remanded for resentencing in light of *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 955 P.2d 798 (1998) (firearm enhancements must run consecutively to the base offense, but may run concurrently to other firearm enhancements).

The Court, in *State v. Coria*, 120 Wn.2d 156, 839 P.2d 890 (1992), upheld the constitutionality of sentence enhancement under RCW 69.50.435. The location of school bus stops can be learned by "observing the gathering of schoolchildren waiting for their school buses, or contacting local schools or the director of transportation for the school district." *Coria*, 120 Wn.2d at 167. Thus, a defendant's knowledge of a school bus stop location is not required; rather, the mere existence of the stop is sufficient to warrant the sentencing enhancement. *Coria*, 120 Wn.2d 156, 166-169.

As under *Coria*, it is of no import here that the defendant was unaware of the existence of a school bus stop. And, therefore, it is irrelevant that Davis did not realize that: (1) the nearby public bus stop was also a designated school bus stop; (2) a public bus was used to transport school children; or that the bus was not standard school bus yellow. Because anyone could discover the stop's location using an objective method, such as observing school children or contacting the school district's director of transportation, *Coria*, 120 Wn.2d at 167, Davis' due process challenge fails.[3]

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the

---

[3]Davis relies on *State v. Becker*, in which a GED program was located on the third floor of a commercial office building. *State v. Becker*, 132 Wn.2d 54, 935 P.2d 1321 (1997). The *Becker* court distinguished *Coria*: Unlike *Coria*, where there was an objective method for locating school bus stops, in *Becker* there was no objective method to determine that a GED program was located in the commercial building; moreover, the court ruled that the program was not a "school" within the meaning of the statute enhancing penalties for drug sales near schools. *Becker*, 132 Wn.2d at 62. Recently, in *State v. Akers*, 136 Wn.2d 641, 965 P.2d 1078 (1998), the Supreme Court upheld Division One's invalidation of a school zone penalty enhancement where there was no readily ascertainable means to discover that a drug transaction took place within 1000 feet of a school, the Youth Education Program (YEP), located inside a downtown Seattle office building. Relying on *State v. Becker*, 132 Wn.2d 54, also concerning YEP, Division One had ruled that whether the YEP program was a "school" was a factual question for the jury. *State v. Akers*, 88 Wn. App. 891, 896-97, 946 P.2d 1222, *aff'd*, 136 Wn.2d 641 (1998).

But here, the existence of a school bus stop was not a factual question for the jury because the school bus stop could be readily ascertained by observing the gathering of school children or by calling the school district. As such, *Akers* is distinguishable from the instant case, just as *Coria* is distinguishable from *Becker*.

654

Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

BRIDGEWATER, C.J., and ARMSTRONG, J., concur.

Review denied at 137 Wn.2d 1037 (1999).