[No. 43625-2-I.  Division One.  May 12, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. GREGORY JOHNSON, *Appellant*.

852

*Eric J. Nielsen* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Erin E. Ehlert, Deputy,* for respondent.

SCHINDLER, J. — Gregory Johnson appeals his conviction for delivery and possession of cocaine. Although the accomplice jury instruction misstated the law of accomplice liability, we conclude the error was harmless beyond a reasonable doubt. The trial court's response to an inquiry from the jury was not an abuse of discretion or an improper comment on the evidence and the school bus zone sentence enhancement statute is not unconstitutionally vague and does not violate Johnson's due process rights. We affirm.

## FACTS

On the afternoon of September 18, 1997, Seattle Police Department officers conducted a "buy/bust" operation in the

Pioneer Square area of downtown Seattle. Detective Joseph Pioli acted as the undercover drug buyer. Pioli was at Prefontaine Park, when a man called Romero Toliver[1] ran up to him and asked what he wanted to buy. Pioli told Toliver he wanted to buy "a 40" (40 dollars worth of rock cocaine).[2] Toliver agreed to help him if Pioli would give him "a chip" of the cocaine in exchange for his assistance.[3]

Toliver then approached Gregory Johnson, who was standing nearby. Toliver told Johnson that Pioli wanted to buy "a 40." Johnson instructed Pioli to give Toliver the money and then Johnson would give Toliver the cocaine for Pioli. Pioli refused to pay until he saw the drugs. As Pioli turned to walk away, Johnson said, "Okay, we'll take you to the tavern and show it to you there."[4] Johnson led Pioli and Toliver to the 611 Tavern.

When they stopped a few feet north of the tavern, another man, Philip Hubert, came out and approached Johnson. Johnson said to Hubert: "he's looking for a forty."[5] Hubert walked back into the tavern. Johnson told Pioli where he should stand. Hubert came out with rock cocaine and walked up to Pioli. In exchange for the cocaine, Pioli gave Hubert prerecorded money. After the exchange, Toliver reminded Pioli that he had promised him a chip of the cocaine for his assistance. Pioli broke off a piece of cocaine and gave it to him. Pioli then gave the prearranged "good buy" signal to the observation officers.

Hubert returned to the tavern, Toliver walked away, and Pioli and Johnson left together in a different direction. Johnson asked Pioli if he had a car. Pioli said he didn't and he was going to meet a friend. According to Pioli's testimony, Johnson then asked if he could have a chip since he

---

[1] Also spelled "Tolliver" in the record.

[2] Report of Proceedings (RP) at 276.

[3] RP at 276.

[4] RP at 279.

[5] RP at 282.

"hooked" Pioli up.[6] Pioli broke off another piece of the cocaine, gave it to Johnson and the two separated.

Several minutes later, Johnson, Toliver, and Hubert were arrested. In a search incident to arrest, the police found a crack pipe in Johnson's pocket. The pipe contained cocaine residue.[7]

Johnson, Hubert and Toliver were charged with delivery of cocaine. The information alleged that on September 18, 1997, they "unlawfully and feloniously did deliver Cocaine, a controlled substance and a narcotic drug, to Seattle police officer Pioli, and did know it was a controlled substance."[8] On December 30, 1997 the information was amended. The amended information alleged that the delivery of cocaine occurred within 1,000 feet of a school bus stop and charged Johnson with a second count of possession of cocaine.

Johnson was tried separately. During his trial, in addition to Pioli, five other officers involved in the "buy/bust" operation testified. Although there were some inconsistencies in the details of the officers' testimony, they corroborated the basic facts of Pioli's account: that Pioli first made contact with Toliver, then with Johnson, and the three walked to the 611 Tavern where Pioli engaged in a transaction with Hubert.

Johnson did not testify. The defense presented the testimony of Hubert who said that he walked out of the tavern and either Johnson or Toliver, he could not remember which one, asked where they could get "a 40." Hubert went back into the tavern, obtained cocaine from someone else, and sold it to Pioli in exchange for two 20 dollar bills. Hubert testified that he did not know Johnson, and Johnson did not touch either the money or the drugs.

The State argued that Johnson's actions in first attempting to get Pioli to give him the money and then taking Pioli to the tavern to buy cocaine made him an accomplice to the

---

[6] RP at 291.

[7] No other cocaine was found on Johnson.

[8] Clerk's Papers (CP) at 1.

delivery from Hubert to Pioli even though he admittedly had no physical contact with the drugs or the money. The State contended that Johnson was guilty under either the solicitation prong or the assistance prong of the accomplice liability statute because he solicited Hubert to sell the cocaine to Pioli and he aided the delivery by leading Pioli to the location of the sale and asking Hubert if he could obtain cocaine. The State also argued that the evidence was uncontroverted that the crack pipe was found in Johnson's possession and the residue in the pipe tested positive for cocaine.

The defense argued that the State's account of the transaction was not credible because of differences in the officers' testimony and that the State failed to prove that Johnson acted as an accomplice in the delivery of cocaine from Hubert to Pioli. The defense also asserted that Johnson should have been charged only with possession of paraphernalia, not possession of drugs.

The jury found Johnson guilty on both the delivery and possession charges and returned a special verdict finding that the delivery occurred within 1,000 feet of a school bus route stop. Johnson was sentenced to a standard range sentence of 132 months, which included a mandatory 24 months for the school bus zone sentence enhancement.

## ACCOMPLICE LIABILITY INSTRUCTION

■ The Washington Supreme Court has held and the State concedes that the jury instruction given in this case misstates the law of accomplice liability.[9] *State v. Cronin,*

---

[9] The trial court gave the standard accomplice liability instruction, Washington Pattern Jury Instruction 10.51:

"A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

"A person is an accomplice of another person in the commission of a crime if with knowledge that it will promote or facilitate the commission of a crime, he or she either:

"(1) solicits, commands, encourages, or requests another person to commit the crime; or

142 Wn.2d 568, 578-79, 14 P.3d 752 (2000); *State v. Roberts*, 142 Wn.2d 471, 513, 14 P.3d 713 (2000).

In *State v. Brown*, 147 Wn.2d 330, 332, 58 P.3d 889 (2002), the Supreme Court concluded that an erroneous instruction on accomplice liability may be harmless error "if, from the record in a given case, it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." In deciding whether the error contributed to the verdict and whether it is harmless, the court must "thoroughly examine the record"[10] and may consider how the case is argued to the jury.[11] The State has the burden of demonstrating that the error is harmless beyond a reasonable doubt. *See State v. Easter*, 130 Wn.2d 228, 234-42, 922 P.2d 1285 (1996).

On appeal, Johnson argues that the erroneous accomplice liability instruction combined with the jury instruction on the definition of delivery was not harmless error because it "left the jury believing that *any* aid that Johnson gave to Officer Pioli in *any* delivery was enough to constitute accomplice liability."[12] Jury instruction 9 defines delivery as "the actual transfer of a controlled substance from one person to another."[13] Johnson also argues that the accomplice instruction allowed the jury to find him guilty as an accomplice based on his participation in uncharged crimes: the transfer of chips of cocaine from Pioli to Toliver and/or from Pioli to himself.

---

"(2) aids or agrees to aid another person in planning or committing the crime.

"The word 'aid' means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice."

CP at 31 (quoting 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.51 (2d ed. 1994)).

[10] *Brown*, 147 Wn.2d at 341.

[11] *See Cronin*, 142 Wn.2d at 580-81; *State v. Stovall*, 115 Wn. App. 650, 63 P.3d 192 (2003); *State v. Wren*, 115 Wn. App. 922, 65 P.3d 335 (2003).

[12] Appellant's Br. at 26.

[13] CP at 27.

■ On this record, Johnson could have been convicted as an accomplice on the delivery charge only if the jury concluded that he solicited or aided in the drug transaction between Hubert and Pioli. The information specified that the charged crime was the delivery of cocaine to Pioli. The evidence and arguments at trial focused only on this delivery. The later transfers of pieces of the cocaine purchased by Pioli first to Toliver, and then to Johnson, were not characterized as separate crimes or deliveries by either party and the State did not argue or suggest these later transfers were a basis for finding accomplice liability.

In his second supplemental brief on appeal, Johnson also contends that the error was not harmless because "the jury could have believed that Johnson was guilty of delivery because he was guilty as a principal with respect to the possession charge."[14]

Where "evidence shows that a defendant facing multiple charges acted as a principal in any of the crimes charged, the difference between 'a crime' and 'the crime' in the accomplice liability instruction is harmless with respect to those charges. . . . But if the evidence . . . shows no direct participation . . . as a principal and the jury may have found the defendant guilty as an accomplice based on his involvement in some crime other than the specific crime charged, the erroneous accomplice liability instruction is not harmless error." *State v. Stovall*, 115 Wn. App. 650, 656-57, 63 P.3d 192 (2003) (citing *Brown*, 147 Wn.2d at 341-42).

But again, in this case, "a crime" for purposes of the accomplice liability instruction referred only to the charged crime of delivery from Hubert to Pioli. In its closing argument to the jury, the State addressed the possession charge separately and did not argue or suggest that accomplice liability for the delivery could be based on Johnson's possession of cocaine. Defense counsel in closing argument also emphasized that the accomplice liability instruction

---

[14] *Appellant's Second Suppl. Br.* at 4.

applied only to the delivery charge and not the possession charge:

> One thing I do want to ask you to be clear about, and it might seem clear, but it's a little confusing. There's two crimes here. So when you take a look at this accomplice thing, when you're considering it that you're not thinking well, did he aid, solicit, or anything like that, anything to do with possession. That's not what we're talking about. Was he an accomplice to the delivery. So focus specifically on did Johnson solicit, encourage, et cetera, a delivery as opposed to possession.[15]

We conclude based on our review of the record that the erroneous accomplice liability instruction did not contribute to the jury's verdict and the error was harmless beyond a reasonable doubt.

## RESPONSE TO JURY INQUIRY

During deliberations, the jury submitted the following question:

> Does aid to the "buyer" apply to the charge of "Delivery of a controlled substance", the same as aid to the "seller."[16]

Johnson's position was that the court should respond by instructing the jury to refer to the jury instructions they were given, or alternatively provide an additional instruction based on *State v. Morris*, 77 Wn. App. 948, 896 P.2d 81 (1995) (holding that a buyer does not "deliver" within the meaning of the Uniform Controlled Substances Act, chapter 69.50 RCW). The State's position was that the court should clarify the instruction by answering in the affirmative, or refer the jury to the instructions already given. After considering these arguments, the trial court decided to respond by answering "yes" to the jury's inquiry.[17]

The jury returned a verdict of guilty on both the delivery and the possession counts and returned a special verdict

---

[15] RP at 436.

[16] CP at 40.

[17] CP at 40.

finding that the delivery occurred within 1,000 feet of a school bus stop.

On appeal, Johnson argues that the court abused its discretion because the court's response to the jury's inquiry was an improper comment on the evidence and prevented him from arguing his theory of the case.

■ When a jury is in deliberations, the trial court has discretion to determine whether to give further instructions upon request. *State v. Brown*, 132 Wn.2d 529, 612, 940 P.2d 546 (1997); *State v. Miller*, 40 Wn. App. 483, 489, 698 P.2d 1123 (1985).

■ Johnson conceded below and at oral argument on appeal that the trial court's response is an accurate statement of the law. *See State v. Grace*, 61 Wn. App. 787, 812 P.2d 865 (1991); *State v. Ramirez*, 62 Wn. App. 301, 814 P.2d 227 (1991) (a person may be an accomplice to the crime of delivery by assisting the buyer or the seller). Because the court's response is an accurate statement of law, it is not an improper comment on the evidence, nor an abuse of discretion. *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001) (jury instructions that do no more than accurately state the law pertaining to an issue do not constitute an impermissible comment on the evidence by the trial judge). The trial court did not abuse its discretion in refusing to give the instruction proposed by Johnson which was not relevant to the case.

Johnson contends that the court's response prevented him from arguing his theory which was that he did not know or have a connection with the seller and therefore was not an accomplice. But contrary to this argument on appeal, Johnson argued this theory at trial and presented the testimony of Hubert to support it. He also argued in the alternative that his minimal participation in the transaction did not make him an accomplice to either Hubert or Pioli.

Johnson also contends that the court's response to the jury's inquiry coupled with the accomplice instruction error

allowed the jury to find accomplice liability based on Johnson's participation in the uncharged subsequent transfers of pieces of the cocaine from Pioli to Toliver or from Pioli to himself. But as previously explained, Johnson was charged and tried only on the theory that he was an accomplice to the delivery of cocaine from Hubert to Pioli. Neither party argued or suggested the uncharged transfers of pieces of cocaine could be a basis for accomplice liability.

## SCHOOL BUS ZONE ENHANCEMENT

RCW 69.50.435 provides for an enhancement of the penalty imposed for a drug offense if the offense occurs within 1,000 feet of a school bus zone.[18] The statute provides that it is no defense to a prosecution for violation of the statute that the defendant is unaware the prohibited activity occurred inside a drug-free zone. RCW 69.50.435(b). The statute defines "school bus route stop" as "a school bus stop as designated by a school district." RCW 69.50.435(f)(3). Under RCW 9.94A.510(6) a mandatory 24-month sentence enhancement is added to the presumptive sentence for violation of RCW 69.50.435.

Relying on *State v. Becker*, 132 Wn.2d 54, 62, 935 P.2d 1321 (1997), Johnson challenges the imposition of the 24-month sentence enhancement on the grounds that RCW

---

[18] RCW 69.50.435 provides in pertinent part:

(a) Any person who violates RCW 69.50.401(a) by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance listed under that subsection . . . .

. . . .

(3) Within one thousand feet of a school bus route stop designated by the school district;

. . . .

may be punished by a fine of up to twice the fine otherwise authorized by this chapter, but not including twice the fine authorized by RCW 69.50.406, or by imprisonment of up to twice the imprisonment otherwise authorized by this chapter . . . .

69.50.435 is unconstitutionally vague and violates his right to due process.[19]

In *State v. Coria*, 120 Wn.2d 156, 839 P.2d 890 (1992), the Washington Supreme Court rejected the argument that RCW 69.50.435 was unconstitutionally vague and that it denied the defendants' rights to due process because the defendants were subjectively unaware they were dealing drugs within a drug-free zone. The court concluded that a defendant who receives a school zone enhancement is not denied due process, even if the school bus stop is unmarked, if information about the location of school bus stops is available through such "objective means as observing the gathering of school children waiting for their school buses or by contacting local schools or the director of transportation for the school district." *Becker*, 132 Wn.2d at 62 (citing *Coria*, 120 Wn.2d at 167). The *Coria* court explained:

> It may be unrealistic, of course, to expect drug dealers to take these steps, but that is irrelevant to the question whether the statute is unconstitutionally vague. The defendants' failure to have been aware of the law and to have taken action to protect themselves against the enhanced penalty for their criminal conduct is no basis for declaring the statute unconstitutionally vague.

*Coria*, 120 Wn.2d at 167.

In *Becker*, the Supreme Court addressed RCW 69.50.435 and these constitutional claims as applied to the delivery of drugs within 1,000 feet of a school. The court found that the situation in *Becker* was "the exact opposite of the situation in *Coria*" because there were no objective means to ascertain that a school existed at that location. *Becker*, 132 Wn.2d at 63. There were no signs indicating the existence of a school in the commercial downtown building nor was the Youth Education Program listed as a school by the school district or in public records. *Becker*, 132 Wn.2d at 63.

---

[19] Johnson did not raise this issue below, but asserts that it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). The State does not contest Johnson's right to raise this issue on appeal.

As in *Coria*, information was available about the location of this bus stop and there were objective means to ascertain its existence. At trial, the State presented the testimony of David Anderson, the Seattle School District's transportation manager, who is responsible for designating school bus routes and designating bus stops. Anderson testified that on the date of the crime there was an active school bus stop, serving one student, at the corner of Second Avenue and Yesler.

Johnson argues that *Coria* does not apply because the State did not present testimony proving the objective means by which Johnson could have ascertained the location of the school bus stop.[20] In *Coria*, the director of transportation for the school district testified that a person could learn the location of a school bus stop by calling his office. *Coria*, 120 Wn. 2d at 160. Anderson, the school district transportation manager, did not specifically say that a member of the public could call his office for information. However, this is the logical inference from his testimony.

We conclude there were objective methods by which Johnson could have ascertained the existence of the school bus stop. *Coria*, 120 Wn.2d at 167; *State v. Davis*, 93 Wn. App. 648, 653 & n.3, 970 P.2d 336 (1999) (rejecting the defendant's argument that the school bus zone sentence enhancement violated his due process right where a public bus stop served as a school bus stop). Based on the rationale of *Coria*, RCW 69.50.435 is not unconstitutionally vague and the sentence enhancement does not violate Johnson's due process rights.

GROSSE and KENNEDY, JJ., concur.

Review denied at 150 Wn.2d 1021 (2003).

---

[20] Johnson points out other differences in *Coria*. He contends that there was evidence in *Coria* that school bus stop locations were published in a local newspaper. But this was not evidence presented at trial; rather it was submitted on appeal as an appendix to an amicus brief. *Coria*, 120 Wn.2d at 160-61. He further claims that because only one student used the bus stop at Second and Yesler he could not have witnessed a gathering of school children at the stop. But assuming Johnson's argument is correct, the other alternative means of obtaining the location of the bus stop were available here.