**Walker WHATLEY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0809–CR–808.**

Court of Appeals of Indiana.

May 21, 2009.

Transfer Granted Aug. 19, 2009.

Bruce E. Andis, Lebanon, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Indianapolis, IN, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Senior Judge.

A jury convicted Walter Whatley ("Whatley") of Possession of Cocaine as a Class A felony under Ind.Code 35–48–4–6(b)(3)(B)(iv). More precisely, Whatley was convicted of possession of cocaine in a quantity in excess of three grams within one-thousand feet of a "youth program center."[1]

Whatley does not contest the fact that he was in possession of cocaine in excess of

---

1. The jury acquitted Whatley of Dealing in Cocaine as a Class A felony under I.C. 35–48– 4–1.

three grams. He also does not contest that he possessed the cocaine within one thousand feet of the Robinson Community Church as charged.[2] Rather, he asserts that the criminal statute and the statute defining a "youth program center" are unconstitutionally vague as applied to him.[3] Insofar as here applied, I.C. 35–41–1–29 defines a youth program center as "a building or structure that on a regular basis provides recreational, vocational, academic, social, or other programs or services for persons less than eighteen (18) years of age."

Citing *Manigault v. State*, 881 N.E.2d 679 (Ind.Ct.App.2008), Whatley contends that "a bright line rule" is constitutionally required and that there is no such bright line in the case before us. In *Manigault*, the court held that the statute "clearly and unambiguously puts any person on notice that cocaine possession 'within one-thousand feet [of a] family housing complex' [is proscribed]." *Id.* at 684. In *Manigault*, the defendant's possession took place on the property of the Knight's Inn Motel.

The definitional statute, IC 35–41–1–10.5, sets forth that a family housing unit is a building or series of buildings that contains at least twelve dwelling units and where children are domiciled or likely to be domiciled. The statute specifically includes a facility "operated as a hotel or motel."[4] *Manigault* made no challenge to the inclusion of a hotel or motel within the definition of a family housing complex as part of his unconstitutional statutory vagueness argument. In this regard, it is important to note that Whatley concedes that there is no "identification" problem with regard to the other locations set forth in the criminal statute, including "schools, parks, and family housing complexes." (Appellant's Brief at 7).

However, Whatley asserts that because a church bears no identifier to signify it as a "youth program center," the statute provides no basis for individuals to know they are within the proscribed distance. This appears to focus primarily upon the "bright line rule" argument as drawn from *Manigault* and from *Polk v. State*, 683 N.E.2d 567 (Ind.1997), *trans. denied.* To be sure, both *Manigualt* and *Polk* do appear to require such a rule so as to communicate to offenders "what conduct is proscribed." *Polk*, 683 N.E.2d at 572.

As Whatley concedes, the family housing complex involved in *Manigault* presented no definitional constitutional problem. Furthermore, Whatley's constitutional challenge to Indiana's definition of a "youth program center" gains no support from *Manigault* or *Polk*. As noted, *Manigault* involved a family housing complex, i.e., a motel.

Most importantly, *Polk* leads to a contrary conclusion than that proffered by Whatley. He is of the view that the Indiana statutory scheme relative to youth program centers is fatally flawed because no bright line rule is present that would put a person of ordinary intelligence on notice that the person is within 1000 feet of an "unmarked youth program center." (Appellant's Brief at 7). *Polk* tells us that

---

**2.** The charging information alleged that Whatley possessed over three grams of cocaine "within 1000 feet of a youth program center, *that is Robinson Community Church.*" (Appellant's App. at 17). (Emphasis supplied).

**3.** Whatley does not assert a defense under I.C. § 35–48–4–16 that he was only briefly within

1000 feet of a youth program center and that there was no person under the age of eighteen in or within 1000 feet of the center. *See Harrison v. State*, 901 N.E.2d 635 (Ind.Ct.App. 2009).

**4.** This statute as set forth was in effect at the time of Manigault's offense.

such knowledge or notice is not required for constitutionality. Our Supreme Court there held:

> Nothing forces drug offenders to drive within the drug-free zone created by the legislature. To the contrary, they pass there at their own peril and in jeopardy of their own penal interests. *Walker*[5] settled that *drug offenders do not have to know that their activities are taking place near a school.* . . .

(Emphasis supplied). If therefore, the Robinson Community Church is a "youth program center,"[6] Whatley's conviction as a Class A felony must stand.

At trial Reverend Robert E. Harvey, senior pastor of the Robinson Community church for nine years, testified that the youth programs conducted at the church consisted of:

(1) "Amani (sic) church services" several Sundays out of the month, targeted for young people age 5–11, to "teach them the purpose of worship and why we worship the way we do";

(2) "Boys to Men" and "Girls to Women" programs which are mentoring programs "so that the kids have positive role models";

(3) A Girl Scout troop made up of girls who are members of the church and a few from the community, meeting twice a month;

(4) "Wednesday Bible Circle" for teens, youth and children broken into age appropriate classes "so that they might learn the Bible and the principles therein";

(5) "Family Fun Night" every Friday from 6 p.m. to 9 p.m. where parents and children meet together at church to "get them to find positive ways to interact one with another. Give children opportunities to see how other kids react and interact with their parents. And give all of them positive role models"; and

(6) Monday night Teen Choir (ages 13–18) and Wednesday night Children's Choir (age 5–12).

(Tr. at 30–33).

We find it significant that Pastor Harvey stated, "[A]ll of these services, events [are] essentially faith based." (Tr. at 35).

The thrust of Whatley's position was stated by counsel in closing argument as follows:

> "Did he [possess cocaine] within a thousand feet of a youth program center? No. He did so within a thousand feet of a church. Churches aren't even covered in the statute. They didn't charge a church. They charged a youth program center. . . . There isn't a youth program center. It's a church"

(Tr. at 166).

Conversely, the State argued, "It's not the building, it's not the primary purpose that determines whether it's a youth program center, it's the activities that go on there." (Tr. at 179).

In terms of felony enhancement for violation of a "drug free zone," the provision including a "youth program center" as such a zone, has not yet been the subject of an Indiana decision. This has caused us to seek guidance from other areas of the law and from other jurisdictions. Our research discloses several A.L.R. annotations bearing generally upon the matter at hand. *See* Mark S. Dennison, *Construction and Application of "Resident Purposes Only" or Similar Covenant Restrictions to Incidental Use of a Dwelling for Business or*

---

**5.** *Walker v. State,* 668 N.E.2d 243 (Ind.1996).

**6.** The criminal statute here involved does not punish possession within 1000 feet of a church.

*Professional Purposes Does Not Violate Restrictive Covenants,* 1 A.L.R.6th 135 (2005); Jay M. Zitter, *What Constitutes Accessory or Incidental Use of Religious or Educational Property Within Zoning Ordinance,* 11 A.L.R.4th 1084 (1982); Jeffrey F. Ghent, *What Constitutes "Church", "Religious Use", or The Like Within Zoning Ordinance,* 62 A.L.R.3rd 197 (1975).

The cases collected are not uniform, from jurisdiction to jurisdiction, in their analysis or in their results. Nevertheless, we find persuasive guidance from several representative cases which hold that the principal character and use of a structure is not changed by some ancillary or accessory use.[7]

In *Richmond Heights v. Richmond Heights Presbyterian Church,* 764 S.W.2d 647 (Mo.1989), the court held that a daycare center for children located on church property was an accessory use as subordinate to the principal use as a church and did not violate zoning restrictions.

In *Synod of Chesapeake, Inc. v. Newark,* 254 A.2d 611 (1969 Del.), a building which had been a single family residence, but was used by the United Presbyterian Church as a combination worship and information center, office, meeting place, and coffeehouse for university students was held to be a "church."

In *Daughters of St. Paul, Inc. v. Zoning Board of Appeals,* 17 Conn.App. 53, 549 A.2d 1076 (1988), an exception to the zoning ordinance was sought to build a convent with a chapel and religious book and audiovisual center in a residential zone. The court held that the proposed convent and chapel, apart from the book and audiovisual center, was a church or other place of worship. The book and audiovisual center "did not render use of the facility to be something other than that of a church or other place of worship." Thus, the basic nature of the structure was not changed by the incidental use as a book and audiovisual center.

In *Lake Brady Spiritualists Camp Association v. Brown,* 62 Ohio St.2d 43, 402 N.E.2d 1187 (1980), a camp with summer gatherings for religious services, lectures, healing services, rummage sales and cookouts at a camp with 10 acres, a church building, a "hotel" building and 36 cottages was held to be a "religious organization" in that the "gatherings constituted regular worship and religious observance." *Id.* at 1188.

Worthy of particular note, in terms of the facts in the case before us, and more particularly in light of the fact that here all of the alleged "youth programs" are "faith based,"[8] is the case of *Community Synagogue v. Bates,* 1 N.Y.2d 445, 154 N.Y.S.2d 15, 136 N.E.2d 488 (1956). There, the New York Court of Appeals considered an application for a change of use permit from a one-family dwelling to a use as a "church for public worship *and other strictly religious uses.*" *Id.* at 490. (Emphasis supplied). The aim of the petitioner was "to establish a permanent place for religious worship, religious teaching and training, fellowship, guidance of indoor and outdoor activities for youth and community work." *Id.* There would be "a men's club, a sisterhood (women's social group) and youth activities in connection with the synagogue." *Id.* Services for the community

---

7. We do observe that Indiana case law is consistent with the proposition that a church does not diminish or change its identity as a church because activities are conducted which are not strictly activities of worship or prayer. *See Board of Zoning Appeals v. Wheaton,* 118 Ind.App. 38, 76 N.E.2d 597 (Ind.Ct. App.1948).

8. The "youth programs" conducted, therefore, had a religious purpose lending themselves to the basic purpose and mission of the structure as a church or house of worship.

were to be performed "such as Red Cross work, Boy Scout work and work of other organizations." *Id.* at 493.

In holding that the permit was wrongly denied, the Court said:

> A church is more than merely an edifice affording people the opportunity to worship God. Strictly religious uses and activities are more than prayer and sacrifice and all churches recognize that the area of their responsibility is broader than leading the congregation in prayer. Churches have always developed social groups for adults and youth where the fellowship of the congregation is strengthened with the result that the parent church is strengthened.

*Id.*

In light of the precedent herein set forth and after careful consideration and deliberation, we hold that the Robinson Community Church was and remains a church and is not converted into a youth program center by reason of its faith-based activities for young people. Bi-weekly Girl Scout troop meetings and mentoring of children by adult members of the congregation were accessory or incidental to the existence and identity as a church. The church was not a youth program center. It remained a church notwithstanding the incidental activities not solely religious in nature.

The judgment is reversed and the cause is remanded to the trial court for entry of a conviction as a Class C felony and to sentence the defendant accordingly.[9]

BAKER, C.J., and MAY, J., concur.

---

9. Because the judgment is reversed and the cause remanded for conviction as a Class C felony and sentencing in accord therewith, we need not address Whatley's argument that his 35–year sentence is inappropriate.