ATTORNEY FOR APPELLANT
Victoria L. Bailey
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

**FILED**
Jun 08 2010, 3:16 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 49S02-0908-CR-379

WALKER WHATLEY,

*Appellant (Defendant below)*,

v.

STATE OF INDIANA,

*Appellee (Plaintiff below)*.

Appeal from the Marion County Superior Court, No. 49G20-0803-FD-64067
The Honorable Michael Jensen, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0809-CR-808

**June 8, 2010**

**Sullivan, Justice.**

The Legislature has declared that if a person commits certain drug offenses within 1,000 feet of a "youth program center," the penal consequences are enhanced. Defendant Walker Whatley committed such an offense within 1,000 feet of a church with an active youth program. The church constituted a "youth program center" for purposes of the enhancement.

**Background**

The facts most favorable to the conviction indicate that in March, 2008, Whatley was arrested at his home on a warrant issued in an unrelated case. During a search incident to arrest, the arresting officer discovered a bag containing 3.2459 grams of cocaine in Whatley's pocket. In relevant part, the State charged Whatley with possession of cocaine as a Class A felony. Possession of cocaine is ordinarily a Class C felony, but possession of three grams or more of cocaine within 1,000 feet of a youth program center elevates the offense to a Class A felony. Ind. Code § 35-48-4-6. Whatley's home, where the arrest occurred, was located approximately 795 feet from Robinson Community Church ("RCC"). Whether RCC qualifies as a "youth program center" for the purpose of triggering the elevation to a Class A felony is the central issue of this appeal.

The jury found that the enhancement was supported by the evidence and the court sentenced Whatley to a term of 35 years.[1] Whatley appealed and the Court of Appeals reversed his

---

[1] The full text of the statute Whatley was convicted under is as follows:

(a) A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses cocaine (pure or adulterated) or a narcotic drug (pure or adulterated) classified in schedule I or II, commits possession of cocaine or a narcotic drug, a Class D felony, except as provided in subsection (b).

(b) The offense is:
  (1) a Class C felony if:
      (A) the amount of the drug involved (pure or adulterated) weighs three (3) grams or more; or
      (B) the person was also in possession of a firearm (as defined in IC 35-47-1-5);
  (2) a Class B felony if the person in possession of the cocaine or narcotic drug possesses less than three (3) grams of pure or adulterated cocaine or a narcotic drug:
      (A) on a school bus; or
      (B) in, on, or within one thousand (1,000) feet of:
          (i) school property;
          (ii) a public park;
          (iii) a family housing complex; or
          (iv) a youth program center; and
  (3) a Class A felony if the person possesses the cocaine or narcotic drug in an amount (pure or adulterated) weighing at least three (3) grams:

conviction on the grounds that RCC did not qualify as a "youth program center." The Court of Appeals found that RCC's hosting of various programs for children did not change its status as a church; thus, removing it from the ambit of the statute's intended coverage for purposes of the sentence enhancement. Whatley v. State, 906 N.E.2d 259 (Ind. Ct. App. 2009). The Court of Appeals remanded the case with instructions to enter the conviction as a Class C felony and sentence Whatley accordingly.

The State sought, and we granted, transfer. Ind. Appellate Rule 58(A).

**Discussion**

**I**

Whatley first contends that his conviction for Class A felony possession of cocaine, grounded on his possession being within 1,000 feet of a youth program center, should be reversed because the criminal statute and the statute defining a youth program center are unconstitutionally vague as applied to him. He asserts that there was nothing about RCC that would put a person of ordinary intelligence on notice that it was a youth program center.[2] Specifically, Whatley argues that RCC bears no objective indicia signaling its designation as a protected area; therefore, the statute is unconstitutional as applied to him because there was no way for him to know that he was within the proscribed distance of an "unmarked youth program center." (Appellant's Br. 7.) Relying on Indiana case law, Whatley insists that due process demands a bright-

---

        (A) on a school bus; or
        (B) in, on, or within one thousand (1,000) feet of:
                (i) school property;
                (ii) a public park;
                (iii) a family housing complex; or
                (iv) a youth program center.

I.C. § 35-48-4-6.

[2] Whatley does not assert a defense under Indiana Code section 35-48-4-16 that he was only briefly within 1,000 feet of a "youth program center" and that there was no person under the age of eighteen in or within 1,000 feet of the center. See Griffin v. State, 925 N.E.2d 344 (Ind. 2010).

line rule for what structures will trigger the sentence enhancement when the protected area is a youth program center.

The phrase "youth program center" is defined by statute as "(1) A building or structure that on a regular basis provides recreational, vocational, academic, social, or other programs or services for persons less than eighteen (18) years of age[;] (2) [t]he real property on which a building or structure described in subdivision (1) is located." I.C. § 35-41-1-29.

Relying on our decision in Walker v. State, 668 N.E.2d 243 (Ind. 1996), the Court of Appeals rejected Whatley's vagueness claim on grounds that the law does not require knowledge of presence within a school-zone in order to trigger the sentence enhancement. In Walker, we held that presence in a school-zone was a strict-liability element. Id. at 244-45. While the Court of Appeals correctly notes that Walker established that drug offenders need not be aware of their presence within a protected area, Whatley's vagueness claim cannot be disposed of on this ground alone.

Walker addressed whether the school-zone elevation in the dealing in cocaine statute, Indiana Code section 35-48-4-1(b)(3), required proof of any mens rea to obtain an enhanced sentence. But the need for proof of mens rea – the precise issue addressed and answered in Walker – is not the same as the constitutional requirement against vagueness. For a statute to avoid constitutional infirmity on vagueness grounds, it must provide the person of ordinary intelligence with notice of what conduct is prohibited.[3]

In Polk v. State, 683 N.E.2d 567 (Ind. 1997), we addressed the defendant's argument that an earlier version of the school-zone statute was unconstitutionally vague as applied to him.[4] Polk argued that the statute did not reasonably inform average people that they would be subject to enhanced penalties for possessing drugs while stopped for a traffic violation in a protected

---

[3] This is a separate question from whether the State provided enough evidence that this particular location qualified under the definitional statute as a "youth program center" which will be addressed in Part II, infra.

[4] The specific version of the statute at issue in Polk and Walker was the 1995 version of Chapter 4 that was in effect at the time the crimes took place in those cases.

4

area. Addressing his vagueness claim, we held that "[t]he school-zone enhancement, far from being unconstitutionally vague, quite clearly communicates to drug offenders a bright[-]line rule as to what conduct is proscribed. Thus a federal constitutional challenge on this ground is merit-less." Id. at 572 (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)).[5]

Whatley's vagueness claim focuses on the statute's requirement that programs or services be provided on a "regular" basis. While it is true that "regular" is susceptible to numerous mean-ings, the Constitution does not demand a statute free of ambiguities, but instead one that will put a person of ordinary intelligence on notice or provide objective criteria for determining whether one is within a protected area. See State v. Winot, 988 A.2d 188, 194 (Conn. 2010) ("Because perfect precision is neither possible nor required . . . the [vagueness] doctrine does not mandate the invalidation of all imprecisely drafted statutes. Simply put, [w]hile some ambiguous statutes are the result of poor draftsmanship, it is apparent that in many instances the uncertainty is mere-ly attributable to a desire not to nullify the purpose of the legislation by the use of specific terms which would afford loopholes through which many could escape." (citations and internal quota-tion marks omitted)).

There are likely hypothetical scenarios in which the definition of "youth program center" would be unconstitutionally vague, but vagueness challenges are challenges that statutes are un-constitutional as-applied, not on their faces. See Evangelatos v. Superior Court, 753 P.2d 585, 592 (Cal. 1988) ("Many, probably most, statutes are ambiguous in some respects and instances

---

[5] The Court of Appeals has upheld the current version of the school-zone statute against a vagueness claim. See Manigault v. State, 881 N.E.2d 679, 687-88 (Ind. Ct. App. 2008) (applying the penalty en-hancement where there was a high density of protected locations in a particular area). And as best as we are able to determine, there is unbroken authority from other jurisdictions as well. See, e.g., People v. Townsend, 62 Cal. App. 4th 1390 (1998) (concluding that a school-zone statute that was ambiguous and susceptible to more than one reasonable interpretation, was not impermissibly vague because it did not invite arbitrary and discriminatory enforcement by those who administer the statute); State v. Brown, 648 So.2d 872 (La. 1995) (statute was not unconstitutionally vague as it was readily understandable, gave adequate notice of what conduct was proscribed, and provided adequate standards for determining guilt or innocence of the accused); Fluellen v. State, 104 S.W.3d 152 (Tex. App. 2003) (penalty enhancement sta-tute was not unconstitutionally vague despite defendant's lack of knowledge that he was in a proscribed area); State v. Davis, 970 P.2d 336 (Wash. Ct. App. 1999) (penalty enhancement statute was not unconsti-tutionally vague despite defendant's lack of knowledge that he was in a proscribed area). We have found no authority to the contrary and Whatley cites none in opposition.

invariably arise under which the application of statutory language may be unclear.  So long as a statute does not threaten to infringe on the exercise of First Amendment or other constitutional rights, however, such ambiguities, even if numerous, do not justify the invalidation of a statute on its face.");  accord Alcalde v. State, 74 P.3d 1253, 1260-61 (Wyo. 2003).  Here, Whatley could have objectively discovered RCC's status as a youth program center by observing young people entering and exiting the building on a regular basis – in fact, his residence faced RCC's entrance.  Whatley could have contacted RCC to inquire whether programs were offered for youth on a regular basis.  And under Walker, it is of no import here that Whatley was unaware of the existence of a youth program center.  It is, therefore, not dispositive that RCC did not have a sign indicating it was a youth program center, or that Whatley did not realize that RCC regularly provided services and programs to young people; an objective observer could discern that the activities occurring at RCC qualified it as a youth program center by observing children entering and exiting the building on a regular basis or by contacting RCC to determine whether it offered programs to young people on a regular basis.  The statute is not vague as applied to these facts.

## II

Whatley contends that his Class A felony conviction is not supported by sufficient evidence.  Specifically, Whatley argues that because the State failed to prove that RCC qualifies as a youth program center under Indiana Code section 35-41-1-29, his sentence should be reduced to a Class C felony.

Relying on principles of zoning law, the Court of Appeals held that the principal character and use of a structure "is not changed by some ancillary or accessory use."  Whatley, 906 N.E.2d at 262.  Applying these principles to RCC, the Court of Appeals found it significant that evidence at trial revealed that all of the youth program services and events were essentially faith based.  Thus, it held that RCC's principal identity or purpose was as a church; it was not converted into a youth program center by reason of its incidental and auxiliary faith-based activities for young people.

We disagree with our colleagues and find that neither the religious content of the programs offered by RCC nor the other uses of the building are relevant to whether RCC meets the statutory definition of a "youth program center." The statute neither explicitly nor implicitly places any limitation on the content of the programs offered or the purposes for which children are present. The only relevant characteristic of the programs and services offered by RCC were whether they were programs provided on a regular basis for persons less than eighteen years of age.

The evidence produced at trial showed that RCC regularly held the following youth programs:

(1) "Amani (sic) church services" several Sundays out of the month, targeted for young people age 5-11, to "teach them the purpose of worship and why we worship the way we do";

(2) "Boys to Men" and "Girls to Women" programs which are mentoring programs "so that the kids have positive role models";

(3) A Girl Scout troop made up of girls who are members of the church and a few from the community, meeting twice a month;

(4) "Wednesday Bible Circle" for teens, youth and children broken into age appropriate classes "so that they might learn the Bible and the principles therein";

(5) "Family Fun Night" every Friday from 6 p.m. to 9 p.m. where parents and children meet together at church to "get them to find positive ways to interact one with another. Give children opportunities to see how other kids react and interact with their parents. And give all of them positive role models"; and

(6) Monday night Teen Choir (ages 13-18) and Wednesday night Children's Choir (age 5-12).

(Tr. at 30-33.)

Whatley himself, "in the interest of candor, . . . concede[s] that the Robinson Community Church does offer activities for children[ and] [t]his was clearly established at trial and cannot reasonably be disputed." (Appellant's Resp. in Opp'n to Transfer 5.) In light of these facts, a

7

jury could properly find that RCC was a "youth program center" because it provided a building or structure that on a regular basis offered recreational, social, or other programs or services for persons less than 18 years of age.

## III

Because we find that the statute is constitutional as applied to Whatley and that his conviction was supported by sufficient evidence, we turn to his final contention that his 35-year sentence is inappropriate in light of the nature of the offense and his character. Pursuant to Indiana Appellate Rule 7(B), an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading us that his sentence meets the inappropriateness standard of review. Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218. "[R]egarding the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed." Id. In this case, "[a] person who commits a Class A felony shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years." I.C. § 35-50-2-4.

Regarding the nature of his offense, Whatley argues that he was at home when he was arrested pursuant to an unrelated warrant, he surrendered without incident, and that he was found in possession of a quantity of cocaine only .2459 grams above the statutory threshold of 3.0 grams of cocaine for a Class A felony. Regarding his character, Whatley contends that the trial court noted only three adult convictions: one misdemeanor charge for possession of marijuana, a Class C felony conviction for cocaine possession, and a revocation of probation.

The record indicates that at the time of Whatley's arrest, he was in possession of a small plastic baggie in his pocket; the baggie contained sixteen smaller baggies "which contained a substance . . . [later confirmed] to be crack cocaine" totaling over three grams. (Tr. at 40-41, 85-86, 88-89, 92-93; State's Ex. 1, 5.) Beyond this, Whatley's possession occurred within 1,000 feet of a statutorily protected area – a youth program center. The trial court also found that

8

Whatley had prior convictions for possession of cocaine, a Class C felony, and possession of marijuana, a Class A misdemeanor. In both cases he had received the opportunity for probation, and in both cases, his probation had been revoked and previously suspended sentences had been ordered executed.

In addition to prior convictions, the record reveals that at the time of sentencing, Whatley faced pending charges in two separate cases. The first included two counts of dealing cocaine, a Class B felony, and two counts of possession of cocaine, one as a Class C felony and one as a Class D felony. The second case included three counts of stalking, two as Class C felonies and one as a Class D felony, two counts of invasion of privacy, a Class A misdemeanor, and two counts of criminal mischief, a Class A misdemeanor. In light of the nature of Whatley's offense and his character as reflected by his criminal history, we cannot say that a sentence five years in excess of the advisory term of 30 years is inappropriate.

## Conclusion

The opinion of the Court of Appeals is vacated. Whatley's conviction and sentence is affirmed.

Shepard, C.J., and Dickson, J., concur.

Boehm, J., dissents with separate opinion in which Rucker, J., concurs.

**Boehm, Justice, dissenting.**

I respectfully dissent. Whatley was convicted of possession of 3.24 grams of cocaine. The penalty for this crime was enhanced from a C felony carrying a maximum sentence of eight years to an A felony with a maximum penalty of fifty years due to the proximity of Whatley's home to Robinson Community Church. The statute here provides for this dramatic enhancement of a sentence if the possession occurs:

(A) on a school bus; or

(B) in, on, or within one thousand (1,000) feet of:

    (i) school property;

    (ii) a public park;

    (iii) a family housing complex; or

    (iv) a youth program center.

Ind. Code § 35-48-4-6. Notably, this short list does not include "church," "place of worship" or other terms that might much more plainly include Robinson Community Church. Nor is there anything in this record indicating that the exterior of the Church revealed the nature or regularity of its youth programs.

I agree with the majority that the statutory definition of "youth program center" as a structure "that on a regular basis provides . . . programs or services" for people under age eighteen turns only on the activities "provided" by the structure. I.C. § 35-41-1-29. But in my view that definition must be confined to comply with basic principles of due process of law. Due process requires that a criminal statute give everyone reasonable notice of what is prohibited. Healthscript, Inc. v. State, 770 N.E.2d 810, 813 (Ind. 2002). It also requires notice of the consequences of violation so the facts warranting the enhanced penalty at issue here are equally subject to the requirement of fair notice. United States v. Batchelder, 442 U.S. 114, 123 (1979); Coleman v. Ryan, 196 F.3d 793, 797 (7th Cir. 1999) ("'[T]he notice requirements of the Due Process Clause' require that a criminal law 'clearly define the conduct prohibited' as well as 'the punishment authorized.' A statute is constitutionally defective if it 'do[es] not state with sufficient clarity the consequences of violating a given criminal statute.'" (quoting Batchelder, 422 U.S. at 123)); United States v. Samaniego-Rodriguez, 32 F.3d 242, 244 (7th Cir. 1994)

1

("The fair notice requirement of the Due Process Clause is satisfied if the criminal statute clearly defines the conduct prohibited and the punishments authorized.").

I agree with the majority that there are many buildings that are easily identified as housing "regular . . . programs or services" for persons under age eighteen. But the statute under the majority's rationale here looks only to the activities conducted in the structure to determine whether it is a youth program center, and not to whether a casual observer could readily discern that the structure provides those services. This reasoning would make a youth program center of every residence housing a Cub Scout weekly meeting. Any other building could become a "youth program center" regardless of its appearance or signage. I would confine the term as the legislature has written it to those structures identifiable from their appearance as likely to house youth programs. These would include Boys and Girls Clubs, YMCAs, YWCAs, sports facilities and the like, but not structures principally identified with other activities, at least without some external signage or other clear indication that the structure houses regularly conducted youth programs.

The State makes no claim that the structure here was readily identifiable as a youth program center. Rather, the State argues that this enhancement applies irrespective of the appearance of the structure. Because I disagree, I believe the Court of Appeals correctly held that the enhanced sentence should be set aside.

Rucker, J., concurs.