Antwon ABBOTT, Appellant,

v.

STATE of Indiana, Appellee.

No. 34A02–1009–CR–1067.

Court of Appeals of Indiana.

June 13, 2011.

Derick W. Steele, Deputy Public Defender, Kokomo, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Antwon Abbott ("Abbott") was convicted in Howard Superior Court of Class B felony possession of cocaine and Class A misdemeanor possession of marijuana. The trial court sentenced Abbott to an aggregate term of twenty years. Abbott appeals and presents three issues, which we reorder and restate as:

I. Whether the trial court erred in admitting evidence which was the result of a search warrant Abbott claims was not supported by probable cause;

II. Whether the school-zone enhancement provision of the possession of cocaine statute is unconstitutional as applied to Abbott; and

III. Whether Abbott's sentence is inappropriate.

We affirm.

### Facts and Procedural History

On September 8, 2009, the Howard County Drug Task Force conducted a controlled buy between Thomas Brown ("Brown"), a suspected drug dealer, and a confidential informant ("CI"). One of the police officers involved in the controlled buy was Gary Taylor ("Officer Taylor"). As Officer Taylor drove to the site of the planned controlled buy to set up video surveillance, he saw a black Oldsmobile with darkly tinted windows. Although Officer Taylor could not identify the occupants of the car, he could tell that there were two people inside. As Officer Taylor continued to the site of the controlled buy,

he noticed that the black Oldsmobile was driving to the same location; in fact, the car stopped in front of Brown's home. This allowed Officer Taylor to note the Oldsmobile's license plate.

After the Oldsmobile stopped in front of his home, Brown exited his house and walked up to the driver's side of the Oldsmobile. Officer Taylor continued to drive, then turned around to set up the surveillance equipment. By the time he returned, however, the Oldsmobile had left.[1]

Officer Taylor then contacted fellow officer Chad VanCamp ("Officer VanCamp") and gave him a description of the Oldsmobile and its license plate number. Officer Taylor explained that he thought that the people inside the car were supplying Brown with the drugs to sell to the CI. Officer VanCamp was in the same neighborhood as Brown's home, and he soon spotted a black Oldsmobile matching the description given by Officer Taylor, including the license plate number. Officer VanCamp believed that the windows of the car were improperly tinted and stopped the car. The location of the stop was within 1,000 feet of the Acacia Academy, a school located in the Main Street Methodist Church.

Using a "tint-o-meter," Officer VanCamp determined that the windows were illegally tinted. When the driver of the car, Dion Jones ("Jones"), rolled down the car window, Officer VanCamp smelled the odor of burnt marijuana. As Officer VanCamp questioned Jones about the smell of marijuana, Abbott, the passenger in the car, leaned over to the driver's side of the car and said, "Hey, VanCamp, it's me that's smoking the weed." Tr. p. 175. Meanwhile, officers Jeff McKay ("Officer McKay") and Adam Martin ("Officer Martin") arrived on the scene to assist Officer

---

1. The CI ultimately purchased cocaine from Brown.

VanCamp. Officer VanCamp discovered that Jones's license was suspended and arrested him. A search of Jones revealed no contraband.

Officer Martin ordered Abbott to exit the car. Officer Martin told VanCamp that he thought Abbott was concealing evidence because he was tensing his buttocks and was uncooperative. As the police searched Abbott, they found rolling papers, and a plastic bag containing twenty-six other smaller baggies. Inside the car, they found plastic bags with the corners cut out. Abbott refused to consent to a search and continued to tighten his buttocks. The police took Abbott to the police station as they obtained a search warrant. When the search warrant was obtained, Abbott was taken to the hospital, where a physician performed a body search. The physician discovered a plastic bag hidden underneath Abbott's scrotum. This bag contained materials that were later determined to be 1.15 grams of cocaine and 5.17 grams of marijuana.

The State charged Abbott on September 9, 2009 with Class A felony dealing in cocaine within 1,000 feet of a school, Class B felony possession of cocaine within 1,000 feet of a school, and Class A misdemeanor possession of marijuana. Prior to trial, Abbott filed a motion to suppress the evidence seized from his person, claiming that the search warrant was based on an unreliable probable cause affidavit. The trial court denied this motion after a hearing. Abbott's jury trial began on August 13, 2010. At trial, Abbott objected to the admission of the baggies containing the cocaine and marijuana, which the trial court overruled. On August 17, 2010, the jury acquitted Abbott on the charge of Class A felony dealing in cocaine, but found him guilty of Class B felony possession of cocaine and Class A misdemeanor possession of marijuana. At a hearing held September 29, 2010, the trial court sentenced Abbott to twenty years on the Class B felony, one year on the Class A misdemeanor, and ordered the sentences to be served concurrently. Abbott now appeals.

## I. Admission of Evidence

■ Abbott argues that the trial court erred in admitting evidence obtained from the search warrant, which he claims was based on a "fundamentally defective probable cause affidavit." Appellant's Br. p. 12. When ruling on the admissibility of evidence, the trial court is afforded broad discretion, and we will reverse only upon a showing of an abuse of that discretion. *Ackerman v. State*, 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *trans. denied.* We do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling, but we also consider the uncontested evidence favorable to the defendant. *Collins v. State*, 822 N.E.2d 214, 218 (Ind.Ct.App.2005), *trans. denied; Ackerman*, 774 N.E.2d at 974–75.

■ Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require probable cause for the issuance of a search warrant. *Casady v. State*, 934 N.E.2d 1181, 1188 (Ind.Ct.App.2010), *trans. denied.* Probable cause is a fluid concept incapable of precise definition and must be decided based on the facts and circumstances of each case. *Id.* In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. *Id.* at 1188–89.

■ The duty of a court reviewing the magistrate's decision is to determine whether the magistrate had a substantial

basis for concluding that probable cause existed. *Id.* at 1189. Although we review this question *de novo,* we give significant deference to the issuing magistrate's determination and focus on whether reasonable inferences drawn from the totality of the evidence support the finding of probable cause. *Id.* "In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases are to be resolved in favor of upholding the warrant." *Id.* (citing *Mehring v. State,* 884 N.E.2d 371, 376 (Ind.Ct.App. 2008)). On review, "we consider only the evidence presented to the issuing magistrate and not *post hac* justifications for the search." *Jaggers v. State,* 687 N.E.2d 180, 182 (Ind.1997).

Here, the probable cause affidavit stated that Officer VanCamp stopped the vehicle for "Window Tint Violation."[2] Appellant's App. p. 18. As he approached the vehicle, he noticed the strong smell of burnt marijuana emanating from the vehicle. After reading the driver his *Miranda* rights, Officer VanCamp questioned him about the smell of marijuana. At that point, Abbott "immediately stated that he was the one who [was] smoking the Marijuana." *Id.* at 18. A search of the driver revealed no contraband, but a search of the car revealed "four clear plastic baggies," two of which had the corners "ripped and missing." *Id.* at 19. A search of Abbott's pants pocket revealed "26 small yellow zip loc baggies" which are "commonly used in packaging illegal narcotics." *Id.* at 18. Officer VanCamp also found rolling papers in Abbott's wallet.

Officer Martin, Officer VanCamp, and Officer McKay all searched Abbott and noticed that his buttocks were "flexed" or clenched, and Abbott declined requests that he relax his buttocks. Moreover, Officer McKay had a prior experience with Abbott where he had hidden cocaine in his buttocks.

From these facts, we think that the issuing magistrate could make a practical, common-sense decision that there was a fair probability that evidence of a crime, i.e. possession of illicit drugs, would be found on Abbott's person. It was clear from Abbott's admission and the odor of marijuana that someone in the car had been smoking marijuana, but the search of the car and the driver revealed no illicit substances. The search of the car and of Abbott's pants did, however, reveal evidence suggesting the packaging of illicit drugs for sale. This, combined with Abbott's history of concealing illicit drugs in his buttocks and the fact that he was clenching his buttocks and refusing the police request to relax strongly suggested that Abbott was concealing illicit drugs in his buttocks.[3] Abbott's claim that the videotape of his encounter with the police does not support the officers' claim that they requested him to relax his buttocks is simply a claim that we reweigh the evidence, which we will not do. *See Collins,* 822 N.E.2d at 218. Therefore, we conclude that the trial court did not abuse its discretion in admitting into evidence the cocaine and marijuana found during the search of Abbott's person.[4]

---

**2.** *See* Ind.Code § 9–19–19–4 (2004).

**3.** Although we will not consider *post hac* justifications for the search, we cannot help but note that the car in which Abbott was the passenger had just been observed to stop in front of a house where the target of a controlled buy, Brown, was staying. Brown came out and spoke to the people inside the car, and the CI subsequently purchased cocaine from Brown.

**4.** In fact, we commend the police officers involved for their decision to seek a warrant before searching Abbott. *See Casady,* 934 N.E.2d at 1189.

## II. Constitutionality of Statutory Enhancement

Abbott also claims that the statute which elevated his possession crime to a Class B felony is unconstitutionally vague as applied to him. We conclude, however, that Abbott failed to preserve any claim of the constitutionality of the statute at issue by failing to file a motion to dismiss raising his constitutional challenge. As we explained in *Baumgartner v. State:*

> Indiana Code section 35–34–1–6(a) (2004) provides that "[a]n indictment or information is defective when ... the statute defining the offense charged is unconstitutional or otherwise invalid." Further, Indiana Code section 35–34–1–4(a) (2004) provides that the trial court "may, upon motion of the defendant, dismiss the indictment or information upon any of the following grounds: ... (1) The indictment or information, or any count thereof, is defective under section 6 of this chapter." This statute further requires that such a motion "be made no later than ... twenty (20) days if the defendant is charged with a felony ... prior to the omnibus date." I.C. § 35–34–1–4(b)(1). A motion made after this time "may be summarily denied if based upon a ground specified in subdivision (a)(1)[.]" I.C. § 35–34–1–4(b). In *Payne v. State,* 484 N.E.2d 16, 18 (Ind. 1985), our supreme court noted these statutory provisions and held, "Generally, the failure to file a proper motion to dismiss raising the Constitutional challenge waives the issue on appeal." *See also Rhinehardt v. State,* 477 N.E.2d 89, 93 (Ind.1985) (holding that defendant failed to preserve claim that statute was unconstitutionally vague where he failed to raise the issue prior to trial by a timely and proper motion to dismiss).

891 N.E.2d 1131, 1135–36 (Ind.Ct.App. 2008). Here, Abbott does not claim to have filed a motion to dismiss, and our review of the record does not indicate that Abbott ever filed a motion to dismiss based on the constitutionality of the statute he now challenges. As such, his current claim is waived. *See id.*

Nevertheless, we have recognized that some cases have considered challenges to the constitutionality of statutes even where the defendant failed to file a motion to dismiss. *See id.* at 1136 (citing *Morse v. State,* 593 N.E.2d 194, 197 (Ind. 1992); *Boyd v. State,* 889 N.E.2d 321, 323–24 (Ind.Ct.App.2008); *Vaughn v. State,* 782 N.E.2d 417, 420 (Ind.Ct.App.2003)). But even if we were to consider Abbott's argument on the merits, he would not prevail.

When a defendant challenges a statute as unconstitutional, we presume the statute is constitutional. *Baumgartner,* 891 N.E.2d at 1136 (citing *State v. Lombardo,* 738 N.E.2d 653, 655 (Ind. 2000)). It is the defendant's burden to rebut this presumption, and we resolve all reasonable doubts in favor of the statute's constitutionality. *Id.* We will not conclude that a statute is unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. *Id.* The statute need only inform the individual of the generally proscribed conduct, not list with exactitude each item of prohibited conduct. *Id.*

A statute may also be unconstitutionally vague if its terms invite arbitrary or discriminatory enforcement. *Id.* (citing *Klein v. State,* 698 N.E.2d 296, 299 (Ind.1998)). The criminal statute in question must indicate where the line is to be drawn between trivial and substantial things, so that erratic arrests and convictions for trivial acts and omissions will not occur. *Id.* But a statute is void for vagueness only if it is vague as applied to the

precise circumstances of the present case. *Id.* (citing *Mallory v. State,* 563 N.E.2d 640, 645 (Ind.Ct.App.1990), *trans. denied* ). The defendant may not devise hypothetical situations which might demonstrate vagueness. *Id.*

Here, Abbott was convicted of possession of cocaine as a Class B felony. Pursuant to Indiana Code section 35–48–4–6(a) (2004), "[a] person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses cocaine (pure or adulterated) . . . commits possession of cocaine," which is generally a Class D felony. However, the offense is elevated to a Class B felony if the person is in possession of less than three grams of cocaine "in, on, or within one thousand (1,000) feet of . . . school property." I.C. § 35–48–4–6(b).[5]

Abbott claims that there were no outwardly visible signs on the Main Street Methodist Church indicating that it had begun housing the Acacia Academy school. But the State was not required to prove that Abbott himself knew that he was in possession of cocaine within 1,000 feet of the school. In *Walker v. State,* 668 N.E.2d 243, 244–45 (Ind.1996), our supreme court held that the defendant's presence in a school-zone is a strict liability element, and that there was no requirement for the State to prove that the defendant knew he was within 1,000 feet of a school when he committed the crime. *See also Polk v. State,* 683 N.E.2d 567, 572 (Ind.1997) (holding that an earlier version of the school-zone enhancement statute was "far from being unconstitutionally vague," and instead "quite clearly communicates to

drug offenders a bright line rule as to what conduct is proscribed.").

The outcome of the present case is controlled by *Whatley v. State,* 928 N.E.2d 202 (Ind.2010). In that case, the defendant claimed that his conviction for Class A felony possession of cocaine based on his possession being with 1,000 feet of a youth program center was improper because the criminal statute and the statute defining a "youth program center" were unconstitutionally vague as applied to him. Specifically, the defendant argued that there was nothing about the youth center in that case that would have put a person of ordinary intelligence on notice that it was, in fact, a youth program center as defined by statute, focusing on the statute's requirement that youth programs or services be provided on a "regular" basis. Our supreme court rejected the defendant's claim. The court acknowledged that although the term "regular" is susceptible to many meanings, the Constitution does not require that a statute be free of all ambiguity. *Id.* at 206. Instead, all that is required is that the statute put a person of ordinary intelligence on notice or provide objective criteria for determining whether one is in a protected area. *Id.*

The *Whatley* court determined that the defendant in that case could have objectively discovered the youth center's status as a protected "youth program center" by observing young people entering and exiting the building on a regular basis or by contacting the center to inquire whether programs for youths were offered on a regular basis. Because the youth program center enhancement, like the school-zone enhancement was a strict-liability enhance-

---

**5.** Abbott makes no argument regarding Indiana Code section 35–48–4–16(b) (2004), which precludes the school-zone enhancement if both "(a) the defendant was in, on, or within the proscribed area only 'briefly,' and

(b) no member of a designated class of young people was within the designated area at the time of the offense." *Griffin v. State,* 925 N.E.2d 344, 345 (Ind.2010).

ment, "it [wa]s of no import ... that Whatley was unaware of the existence of a youth program center." *Id.* Thus, it was not dispositive that the center did not have a sign indicating that it was a youth program center or that Whatley did not realize that the center regularly provided programs and services to young people. *Id.* All that mattered was that an objective observer could discern that the activities occurring at the center qualified it as a youth program center. *Id.*

The same is true here. It does not matter that the church had only recently started to house the private school, nor does it matter whether there was no sign indicating that there was a school on the church's property. All that matters is that an objective observer could discern that there was a school by observing the children coming and leaving the church's property or by contacting the church and asking if it hosted a school. *See id.* Under these facts and circumstances, *Whatley* is controlling, and the school-zone enhancement is not unconstitutionally vague as applied to Abbott.

### III. Sentencing

▮▮▮ Lastly, we address Abbott's argument that his sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind.2008).

It is on the basis of Appellate Rule 7(B) alone that a criminal defendant may now challenge his sentence "where the trial court has entered a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence that is supported by the record, and the reasons are not improper as a matter of law, but has imposed a sentence with which the defendant takes issue." *Anglemyer v. State,* 868 N.E.2d 482, 491 (Ind.2007). It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. *Id.* at 494.

▮▮▮ Abbott also briefly notes that "[t]he maximum possible sentences are generally most appropriate for the worst offenders." *Wells v. State,* 904 N.E.2d 265, 274 (Ind.Ct.App.2009), *trans. denied* (citing *Buchanan v. State,* 767 N.E.2d 967, 973 (Ind.2002)). But this is "not an invitation to determine whether a worse offender could be imagined, as it is always possible to identify or hypothesize a significantly more despicable scenario, regardless of the nature of any particular offense and offender." *Id.* In stating that maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. *Id.* But this encompasses a considerable variety of offenses and offenders. *Id.* We concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced and what it reveals about his character. *Id.*

The nature of Abbott's offense supports the trial court's sentencing decision. Abbott was found with a not insubstantial

amount of cocaine and marijuana, along with plastic baggies that are commonly used to package illicit drugs for sale.[6] Abbott's character further supports the trial court decision to impose a twenty-year sentence. In addition to numerous arrests as both a juvenile and an adult,[7] Abbott has an extensive history of juvenile delinquency and adult criminal convictions. As a juvenile, Abbott was found to be a delinquent at least twice and violated his juvenile probation. As an adult, Abbott has ten convictions, including felony convictions for receiving stolen property, cruelty to an animal, and possession of cocaine. For the latter conviction, Abbott was sentenced to four years, with three executed and one suspended to probation.[8] Clearly, Abbott has not reformed his criminal behavior despite his numerous prior contacts with the criminal justice system. After giving due consideration to the trial court's sentencing discretion, and in light of the nature of the offense and the character of the offender, we cannot say that Abbott has met his burden of demonstrating that his twenty-year sentence is inappropriate.

## Conclusion

The trial court did not err in admitting evidence found as a result of the search warrant issued to search Abbott's body, and the school-zone enhancement statute is not unconstitutionally vague as applied to Abbott. Lastly, Abbott's twenty-year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.

6. Although Abbott was acquitted of dealing in cocaine, we cannot overlook the circumstances surrounding Abbott's crimes of possession, which include indications that he was at least preparing to package the drugs in his possession.

7. Although a record of arrests, without more, does not establish the "historical fact" that a defendant committed a criminal offense, a record of arrests, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State and may be relevant to the assessment of the defendant's character. *Cotto v. State*, 829 N.E.2d 520, 526 (Ind.2005).

8. A petition to revoke probation was filed in this case, but the resolution of that petition is not contained in the presentence investigation report.