**Ronnie MANIGAULT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0707–CR–565.

Court of Appeals of Indiana.

Feb. 22, 2008.

a general physical description of the wanted individual but no photograph.

Later, Trooper Smith observed Manigault, who "c[a]me out and began hanging around, loitering around the vehicle that [Trooper Smith] was observing, standing behind it, leaning up against the wall behind it, standing up alongside the vehicle...." (Tr. 64). Manigault matched the wanted individual's general description. Trooper Smith approached Manigault, believing Manigault to be the person he was seeking. As Trooper Smith approached in his police vehicle, Manigault "immediately turned around in a rapid ... evasive movement and made it into the hotel lobby...." (Tr. 65).

Trooper Smith followed Manigault into the lobby, where he found Manigault "standing back in a corner that was away from any type of vending" or "where you would be talking to the hotel clerk." (Tr. 65). Trooper Smith informed Manigault of the nature of his investigation—that he was seeking an individual wanted on outstanding arrest warrants—and gave Manigault that individual's name. Manigault denied that he was that individual. Trooper Smith then asked Manigault for a form of identification to confirm Manigault's identity.

When Manigault informed Trooper Smith that he did not have any identification, Trooper Smith requested his name and date of birth. After Manigault had given Trooper Smith a name and date of birth, Trooper Smith asked Manigault his age. The age given by Manigault "was not even close to the date of birth that [Manigault] provided...." (Tr. 67). Manigault then proceeded to give Trooper Smith "several" other names and dates of birth, which Trooper Smith "tried to confirm through the Indiana Bureau of Motor Ve-

Elizabeth A. Gabig, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Ronnie Manigault appeals his conviction in a bench trial of possession of cocaine, as a class B felony.[1]

We affirm.

*ISSUES*

1. Whether the trial court erred in admitting evidence.

2. Whether the trial court erred in denying Manigault's motion to dismiss.

*FACTS*

At approximately 11:30 p.m. on November 6, 2006, Indiana State Police Trooper Brad Smith went to the Knights Inn Motel, located in Marion County, to investigate a report that an individual with outstanding arrest warrants was living at the motel. Trooper Smith located the wanted individual's vehicle in the motel's parking lot. The motel, however, did not list the individual by name as a registered guest. Trooper Smith therefore waited in the parking lot to see if the individual would return to the vehicle. Trooper Smith had

1. Ind.Code § 35-48-4-6.

hicles or through the Indianapolis Justice computers...." (Tr. 67). None of the names, however, matched any of the records despite Manigault claiming to have had an Indiana identification card or license issued by the Indiana Bureau of Motor Vehicles.

Believing that Manigault had given him false names and information, Trooper Smith placed Manigault in handcuffs for the sole purpose of transporting him to "the Indianapolis IDENT Section where they identify people by fingerprints," which was located approximately fifteen miles from the motel. (Tr. 69). The fingerprints positively identified Manigault, who had an outstanding arrest warrant for resisting law enforcement. Manigault, however, was not the individual originally sought by Trooper Smith for an outstanding drug-related arrest warrant.

Due to Manigault's outstanding arrest warrant, Trooper Smith placed Manigault under arrest and transported Manigault to Marion County's Adult Processing Center and conducted an inventory of Manigault's personal property. During the inventory, Trooper Smith "found a baggie in [Manigault's] pocket that contained an off-white rock like substance...." (Tr. 70). The substance later tested positive for "cocaine base in the net weight of 1.48 grams." (Tr. 93).

The State charged Manigault with possessing cocaine within one thousand feet of a family housing complex,[2] a class B felony. Manigault sought to suppress the evidence seized. During the suppression hearing, Trooper Smith testified that Manigault matched the general physical description given for the individual in the arrest warrant. The trial court denied Manigault's motion to suppress.

On May 30, 2007, Manigault filed a motion to dismiss, arguing that Indiana Code section 35–48–4–6 is unconstitutional. The trial court admitted into evidence a map of Marion County, showing the approximate locations of schools, parks, family housing complexes and youth program centers located in Marion County. Manigault argued that the density of such locations renders Indiana Code section 35–48–4–6 unconstitutional. The trial court denied the motion to dismiss.

Also on May 30, 2007, the trial court held a bench trial, during which Manigault objected to admission of the evidence. The trial court found Manigault guilty as charged and sentenced him to ten years in the Department of Correction.

## DECISION

### 1. *Admission of Evidence*

Manigault asserts the trial court abused its discretion in admitting evidence that he possessed cocaine. The admission of evidence is a matter left to the sound discretion of the trial court, and a reviewing court will reverse only upon an abuse of that discretion. *Washington v. State,* 784 N.E.2d 584, 587 (Ind.Ct.App.2003). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* "We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling." *Lundquist v. State,* 834 N.E.2d 1061, 1067 (Ind.Ct.App.2005). "However, we must also consider the uncontested evidence favorable to the defendant." *Id.*

Manigault argues that the seizure of the cocaine resulted from a detention that violated the Fourth Amendment to the United States Constitution and Article 1, Sec-

2. Indiana Code section 35–41–1–10.5 defines "family housing complex" in part as a build-

ing or series of buildings "that is operated as a hotel or motel...."

tion 11 of the Indiana Constitution. Namely, Manigault contends that Trooper Smith initially lacked reasonable suspicion to conduct an investigatory stop.

■ Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. *Barfield v. State,* 776 N.E.2d 404, 406 (Ind.Ct.App.2002). This protection also governs " 'seizures' of the person." *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Generally, a seizure does not occur until the defendant is actually detained. *California v. Hodari D.,* 499 U.S. 621, 624–26, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); *Wilson v. State,* 670 N.E.2d 27, 31 (Ind.Ct.App.1996) (holding no violation of Fourth Amendment until physical seizure of person accomplished). "Detention turns on an evaluation, under all the circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business." *Finger v. State,* 799 N.E.2d 528, 532 (Ind.2003) (citing *Hodari D.,* 499 U.S. at 628, 111 S.Ct. 1547). Not all police-citizen encounters implicate the Fourth Amendment. *Huey v. State,* 503 N.E.2d 623, 625 (Ind. Ct.App.1987). A seizure, for example, does not occur "simply because a police officer approaches a person, asks questions, or requests identification." *Bentley v. State,* 846 N.E.2d 300, 305 (Ind.Ct.App. 2006), *trans. denied.*

Here, Trooper Smith observed Manigault loitering near a vehicle belonging to an individual with an outstanding arrest warrant. Manigault matched the wanted individual's general physical description. As Trooper Smith approached Manigault, Manigault retreated into the motel's lobby. Trooper Smith then followed Manigault into the hotel lobby, where he revealed to Manigault the nature of his investigation and asked Manigault for his identification and identifying information to confirm that Manigault was not the individual he was seeking.

■ Given these facts, we do not find that Trooper Smith's approach and initial contact with Manigault amounted to a seizure under the Fourth Amendment, as Trooper Smith gave no indication that Manigault was not free to leave. *See Overstreet v. State,* 724 N.E.2d 661, 664 (Ind.Ct.App.2000) (discussing examples of circumstances under which a reasonable person would have believed he was not free to leave, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled"), *trans. denied.*

■ Although Trooper Smith's initial encounter with Manigault did not constitute a detention, we agree that his encounter with Manigault ultimately evolved into a detention for investigatory purposes. A person may be detained on less than probable cause if the officer has a justifiable suspicion the suspect has committed a crime, providing the intrusiveness and nature of the seizure is "reasonably related in scope to the justification for [its] initiation. The officer must be able to point to specific and articulable facts which reasonably warrant the intrusion upon the individual's right of privacy." *Terry,* 392 U.S. at 21, 88 S.Ct. 1868. "[T]he reasonable-suspicion inquiry is fact-sensitive and thus must be determined on a case-by-case basis." *State v. Belcher,* 725 N.E.2d 92, 94 (Ind.Ct.App.2000), *trans. denied.* Officers "must have more than an inchoate and unparticularized suspicion or hunch, but need not have the level of suspicion neces-

sary for probable cause." *Id.* Furthermore, under Article 1, Section 11 of the Indiana Constitution, the State must show that, in the totality of circumstances, the intrusion was reasonable. *Finger v. State,* 799 N.E.2d 528, 535 (Ind.2003).

In this case, Trooper Smith relied on the following facts when he detained Manigault: 1) Trooper Smith had been provided information that an individual with an outstanding arrest warrant was staying at the Knights Inn Motel; 2) Trooper Smith discovered a vehicle belonging to an individual with a warrant parked in the hotel's parking lot; 3) Trooper Smith observed Manigault come out of the motel and into the motel's parking lot, where he loitered near the wanted individual's vehicle; 4) Manigault matched the general physical description of the wanted individual sought by Trooper Smith; 5) as Trooper Smith approached Manigault, Manigault attempted to evade Trooper Smith by walking into the lobby; 6) Manigault gave Trooper Smith obviously false names and information upon being advised that Trooper Smith was conducting a criminal investigation; and 7) Trooper Smith confirmed that the information given to him by Manigault was false.

■■■ "Deceptive responses may contribute to reasonable suspicion of criminal activity." *Id.* at 534. Manigault's responses, in conjunction with the other facts, were sufficient to create reasonable suspicion of criminal activity.[3] Accordingly, we find no violation of Manigault's rights under the Fourth Amendment.

We further find that Trooper Smith's detention of Manigault was reasonable given the totality of the circumstances and therefore did not violate Manigault's rights under the Indiana Constitution. The facts presented in this case are sufficient to create reasonable suspicion, and also supported Trooper Smith's belief that a crime had been committed. *See Finger,* 799 N.E.2d at 535. ("[T]he State must show that the facts at the time, along with the reasonable inferences arising from those facts, would justify a prudent person in believing that a crime has been or is about to be committed.").

■■■ We find no abuse of discretion in admitting the cocaine where 1) Manigault's initial detention was valid under both the federal and state constitutions; 2) Trooper Smith subsequently had probable cause to arrest Manigault; and 3) Trooper Smith discovered the cocaine during a search incident to Manigault's lawful arrest.

2. *Motion to Dismiss*

■■■ Manigault asserts the trial court erred in denying his motion to dismiss. Specifically, Manigault argues that the statute under which he was convicted and sentenced—Indiana Code section 35–48–4–6—is (a) void for vagueness; (b) violates the Proportionality Clause of Article 1, Section 16 of the Indiana Constitution; (c) violates the Privileges and Immunities Clause under Article 1, Section 23 of the Indiana Constitution; (d) violates the right to equal protection under the Fourteenth Amendment; and (e) violates his right to present a defense.

**3.** Manigault's responses did in fact amount to criminal activity. Trooper Smith was seeking an individual with an arrest warrant. When confronted by Trooper Smith, Manigault lied regarding his identity. Thus, Manigault falsely informed pursuant to Indiana Code section 35–44–2–2. *See Smith v. State,* 660 N.E.2d 357, 359 (Ind.Ct.App.1996) (finding evidence

sufficient to convict defendant of false informing where officer "was engaged in the official investigation of the violation of judicial orders for which . . . outstanding warrants were issued" and defendant intentionally lied to officer about his name and birth date). Accordingly, we also would find that Trooper Smith had probable cause to arrest Manigault.

[W]e observe that we review the denial of a motion to dismiss for an abuse of discretion. But the interpretation of a statute is a question of law for the courts, and we review questions of law under a de novo standard and give no deference to the trial court's conclusions.

In considering a constitutional challenge to a statute, we presume that the statute is valid and place a heavy burden on the challenger, who must clearly overcome that presumption. All reasonable doubts must be resolved in favor of the statute's constitutionality.

*W.C.B. v. State*, 855 N.E.2d 1057, 1059 (Ind.Ct.App.2006) (internal citations omitted).

### a. *Vagueness*

 Manigault argues that Indiana Code section 35–48–4–6 is unconstitutionally vague. Namely, Manigault contends that "given the density of locations listed in [sub]section (b) [of Indiana Code section 35–48–4–6], there is no place in Marion [C]ounty where a person found possessing less than three (3) grams of cocaine or narcotic drug could know whether he or she would face a D felony or B felony charge." Manigault's Br. 12. Manigault further contends that "[t]his circumstance leaves the opportunity for police and prosecutors to arbitrarily or even discriminatorily determine which arrested individuals are charged with merely a D felony as opposed to a B felony." *Id.*

A criminal statute may be unconstitutionally vague under the First and Fourteenth Amendments to the United States Constitution if it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or if it "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." With respect to the first category of vagueness, a statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. As to the second category, a statute is problematic when it "vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute...." Moreover, a statute is void for vagueness only if it is vague as applied to the precise circumstances of the instant case.

*W.C.B.*, 855 N.E.2d at 1061–62 (internal citations omitted).

Here, the State charged Manigault with possessing less than three grams of cocaine within one thousand feet of a family housing complex. Indiana Code section 35–48–4–6 provides, in relevant part, as follows:

(a) A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses cocaine (pure or adulterated) or a narcotic drug (pure or adulterated) classified in schedule I or II, commits possession of cocaine or a narcotic drug, a Class D felony, except as provided in subsection (b).

(b) The offense is:

\* \* \*

(2) a Class B felony if the person in possession of the cocaine or narcotic drug possesses less than three (3) grams of pure or adulterated cocaine or a narcotic drug:

(A) on a school bus; or

(B) in, on, or within one thousand (1,000) feet of:

(i) school property;

(ii) a public park;

(iii) a family housing complex; or

(iv) a youth program center[.]

The language of Indiana Code section 35–48–4–6 is neither indefinite nor uncertain. Rather, the language clearly and unambiguously puts any person of ordinary intelligence on notice that possessing cocaine "within one thousand feet" of any school property, public park, family housing complex or youth program is a class B felony. *See Polk v. State,* 683 N.E.2d 567, 572 (Ind.1997) ("The school-zone enhancement, far from being unconstitutionally vague, quite clearly communicates to drug offenders a bright line rule as to what conduct is proscribed.").

Furthermore, the statute is not unconstitutionally vague or overbroad as applied to this case. *See Wells v. State,* 848 N.E.2d 1133, 1146 (Ind.Ct.App.2006) ("[V]agueness challenges to statutes that do not involve the First Amendment freedoms must be examined in light of the particular facts of the case at hand."), *trans. denied, cert. denied,* —— U.S. ——, 127 S.Ct. 1913, 167 L.Ed.2d 567 (2007). Manigault possessed cocaine while on the property of the Knights Inn Motel, which is a family housing complex pursuant to Indiana Code section 35–41–1–10.5. Thus, we are not convinced that Manigault's arrest and subsequent conviction were the result of an unconstitutional application of the statute.

### b. *Proportionality*

Manigault argues that the enhancement of his offense from a class D felony to a class B felony violated Article 1, Section 16 of the Indiana Constitution, which requires all criminal penalties to be proportionate to the nature of the offense. Citing to *Poling v. State,* 853 N.E.2d 1270 (Ind.Ct.App.2006), Manigault contends that under the statute, a defendant in Marion County may be convicted of either a class D or class B felony for the same crime due to "Marion [C]ounty's dense

landscape of areas of elevated punishment...." Manigault's Br. 14.

In *Poling,* this court found a statute regarding neglect of a dependent violated the Proportionality Clause because "the crimes of neglect of a dependent as a class C felony and neglect of a dependent as a class D felony, each carrying a different sentencing range, can be proven with identical elements. Prosecutors would likely pursue the C felony charge, and thus a longer sentence, for defendants charged with this crime." 853 N.E.2d at 1277.

Here, there is no such issue. Indiana Code section 35–48–4–6 clearly requires an additional element before possession of cocaine may be charged as a class B felony. Assuming Manigault's contention that "there are few, if any, locations within Marion [C]ounty that aren't either within or accessed by passing within one of the forbidden areas" is true, prosecutors nonetheless must prove proximity to a site listed in subsection (b) to obtain a conviction for a class B felony. Thus, we find no constitutional infirmity. *See Schnitz v. State,* 650 N.E.2d 717, 724 (Ind.Ct.App. 1995) (holding that a reviewing court will not disturb the legislatures determination of an appropriate sentence for a crime unless there is a showing of clear constitutional infirmity).

### c. *Privileges and Immunity Clause*

Manigault next contends that Indiana Code section 35–48–4–6 violates the Privileges and Immunities Clause of Article 1, Section 23 of the Indiana Constitution. In determining whether a statute complies with Article 1, Section 23 of the Indiana Constitution, reviewing courts exercise substantial deference to legislative discretion. *Minton v. State,* 802 N.E.2d 929, 935 (Ind.Ct.App.2004).

Article 1, Section 23 of the Indiana Constitution provides, "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

This provision imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of people. First, the disparate treatment accorded by the legislation must be reasonably related to the inherent characteristics that distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. In determining whether a statute complies with Article I, Section 23, "courts must exercise substantial deference to legislative discretion." The challenger carries the burden "to negative every reasonable basis for the classification."

*Teer v. State,* 738 N.E.2d 283, 288 (Ind.Ct. App.2000) (internal citations omitted).

Manigault argues that Indiana Code section 35–48–4–6 "creates two classes of citizens, those charged with simple possession and those charged with the offense elevated by location" and that "[t]he only inherent characteristic that distinguishes the two classes in Marion County is the will of the arresting officer or deputy prosecutor to specify a school, park, family housing complex, or youth program center and include the location in the probable cause affidavit or charging information." Manigault's Br. 15. We find this argument unpersuasive.

The inherent characteristic that distinguishes the person charged with a class D felony from the person charged with a class B felony is the proximity to places where children congregate. "[T]he 'violent and dangerous criminal milieu' created by drug dealing and possession is a sufficient rationale to render this legislative policy constitutional." *Polk v. State,* 683 N.E.2d 567, 571 (quoting *Reynolds/Herr v. State,* 582 N.E.2d 833, 839 (Ind.Ct.App.1991)).

As to the requirement that Indiana Code section 35–38–4–6 uniformly apply to all similarly situated persons, Manigault contends that the statute "confers the privilege of lesser punishment to individuals the State arbitrarily chooses...." Manigault's Br. 15–16. Manigault, however, provides no basis for this contention. Thus, we do not address it, and Manigault's challenge fails. *See Minton v. State,* 802 N.E.2d 929, 935 (Ind.Ct.App. 2004).

### d. *Equal protection*

Manigault asserts that Indiana Code section 35–48–4–6 violates his right to equal protection under the Fourteenth Amendment, which provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." Specifically, Manigault argues that "[g]iven the expansiveness of the drug-free zones created by this statute, the ability of drug offenders to choose to avoid or enter such zones is greatly diminished, if not eliminated within Marion County," thereby subjecting "[n]early every person arrested ... for cocaine or narcotic drug possession in Marion County ... to the enhanced class B felony where Indiana offenders outside the county would not be." Manigault's Br. 17.

"In addressing an equal protection challenge, we must first determine which level of scrutiny is applicable: the traditional 'rational basis' analysis or the more stringent 'strict scrutiny' analysis. We will apply a rational basis analysis except where the classification is suspect or involves fundamental rights." *Schnitz,* 650 N.E.2d at 725. Manigault concedes that the rational basis standard applies to this case.

We have held that enhanced penalties for controlled substance violations within 1,000 feet of schools are "rationally related to legitimate legislative objective" of protecting children. *See Polk,* 683 N.E.2d at 571; *Reynolds/Herr,* 582 N.E.2d at 839. Similarly, we find the application of enhanced penalties for controlled substance violations within 1,000 feet of parks, family housing complexes and youth program centers is rationally related to the legitimate governmental interest of protecting children from the perils and dangers associated with drug trafficking.

We cannot say that the statute is invalid merely because it may affect a greater proportion of defendants in Marion County than in other counties. Furthermore, Manigault has failed to show that the enhancement provision of Indiana Code section 35–48–46 does in fact impact defendants in Marion County in a greater proportion.[4] Accordingly, we find no violation of the Fourteenth Amendment.

e. *Ability to present a defense*

 Finally, Manigault asserts that his "right to present a defense and challenge the charge against him ha[s] been violated" under the Sixth Amendment and Article 1, Section 13 of the Indiana Constitution. Manigault's Br. 19. Specifically, Manigault argues that the defenses listed under Indiana Code section 35–48–4–16 are "unavailable for a defendant in Marion County." Manigault's Br. 17.

Indiana Code section 35–48–4–16 provides the following relevant defense:

(b) It is a defense for a person charged under this chapter with an offense that contains an element listed in subsection (a) that:

(1) a person was briefly in, on, or within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center; and

(2) no person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or within one thousand (1,000) feet of the school property, public park, family housing complex, or youth program center at the time of the offense.

The right to present a defense is a fundamental element of due process of law. *See Allen v. State,* 813 N.E.2d 349, 361 (Ind.Ct.App.2004). In this case, however, we cannot agree that Manigault's right to present a defense was abridged. Nothing in the record indicates that Manigault was prevented from asserting a defense. Thus, we find no violation under either the Sixth Amendment or the Indiana Constitution.

Affirmed.

BAKER, C.J., and BRADFORD, J., concur.

**4.** In a similar argument, the defendant in *Steelman v. State,* 602 N.E.2d 152 (Ind.Ct. App.1992) asserted that "the statutory provision increasing the penalty for delivering marijuana within 1,000 feet of school property violates the Equal Protection Clause because it discriminates against minority defendants," who typically live in confined urban settings and therefore in close proximity to schools. Finding no "proof of a racially discriminatory intent or purpose, let alone proof that the statute does, in fact, affect a greater proportion of minority defendants," this court declined to find a violation of the Equal Protection Clause. *See* 602 N.E.2d at 157 (citing *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) ("[A] law neutral on its face ... is [not] invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another.")).