Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NICK BIGSBY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1106-CR-528 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1011-FA-086432

**February 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Nick Bigsby ("Bigsby") appeals his convictions for Rape, as a Class A felony,[1] Strangulation, a Class D felony,[2] and Battery, as a Class A misdemeanor.[3] We affirm.

**Issues**

Bigsby presents three issues for review:

I. Whether there is sufficient evidence to support his conviction of Rape;

II. Whether there is a reasonable possibility that the jury used the same evidence to convict him of Strangulation and to support the elevation of his Rape offense from a Class B felony to a Class A felony; and

III. Whether the trial court's evidentiary rulings deprived Bigsby of a fair trial.

**Facts and Procedural History**

During the evening of November 13, 2010, V.S. was using her key to enter her Indianapolis apartment when her former boyfriend, Bigsby, appeared at the door and "nudged" his way inside. (Tr. 153.) Bigsby followed V.S. into her bedroom and the two began to argue. Bigsby "came around the side of the bed" and began to choke V.S. until she "kind of blacked out." (Tr. 157.) He let go after V.S. began gasping. V.S. was able to push Bigsby away from her.

As V.S. lay on her bed in a fetal position, Bigsby began striking V.S.'s arms, head and shoulders. He was raging and spitting, threatening "Bitch, I'll kill you." (Tr. 159.) At one

---

[1] Ind. Code § 35-42-4-1.
[2] Ind. Code § 35-42-2-9.
[3] Ind. Code § 35-42-2-1. Bigsby does not challenge the judgment of conviction entered upon his pleas of guilty to Invasion of Privacy, as a Class A misdemeanor, Resisting Law Enforcement, as a Class D felony, and Resisting Law Enforcement, as a Class A misdemeanor, nor does he specifically challenge the determination that he is a habitual offender.

point, Bigsby hit V.S. on the side of her ear so hard that she temporarily went deaf, hearing "nothing but bells." (Tr. 165.)

V.S. got up and went into her bathroom; Bigsby followed and accused V.S. of trying to get to the kitchen to retrieve a knife. V.S. denied the accusation, but Bigsby then went to retrieve knives from the kitchen. He slid one knife into the front door frame and took others into the bedroom. V.S. observed that Bigsby had an orange boxcutter in addition to her kitchen knives. He held a black-handled butcher knife against V.S.'s throat while threatening to kill her. "Over and over" Bigsby repeated "the only way that we was [sic] leaving out of there was in body bags." (Tr. 163.)

After the return to the bedroom, another altercation began with Bigsby questioning V.S. about other men and escalating into "pushing and choking" and Bigsby placing V.S.'s head into a headlock, twisting her neck "as if to break it." (Tr. 164.) He applied so much force that V.S. heard popping sounds. When Bigsby let go, V.S. pleaded with him to leave her alone and let her sleep.

After V.S. lay down on her bed, Bigsby repeatedly tried to pull down her pajama pants. Bigsby insisted that V.S. had taken another man to her relative's funeral and demanded "you f----d him, so why can't you f—k me." (Tr. 167.) After wrestling with Bigsby and trying in vain to pull her pajama pants back up, V.S. stopped fighting. Bigsby then had sexual intercourse with her. Bigsby fell asleep with his leg across V.S. so as to pin her to the bed.

The following morning, V.S. awoke and gathered her clothes together. When Bigsby

3

learned that V.S. was attempting to dress and leave, he snatched away the clothes and also grabbed her cellular phone and stomped on it. Bigsby began again to "smack and choke" V.S., but "not to the extent of the night before." (Tr. 175-76.) He again had sexual intercourse with V.S. Afterward, V.S. took medication that had been prescribed for fibromyalgia and slept for the remainder of the day and night.

When V.S. and Bigsby awoke the next day, he appeared calmer and V.S. suggested to Bigsby that she needed to go to the grocery store. Bigsby did not stop her. After leaving her apartment, V.S. went to the leasing office, borrowed the manager's cellular phone, and called police. After a foot chase and altercation with police, Bigsby was arrested.

The State charged Bigsby with four counts of Rape, Criminal Confinement,[4] Strangulation, two counts of Battery, Interference with Reporting a Crime,[5] Invasion of Privacy,[6] and two counts of Resisting Law Enforcement.[7] The State also alleged that Bigsby is a habitual offender.

On May 9, 2011, Bigsby pled guilty to Invasion of Privacy and two counts of Resisting Law Enforcement. He was brought to trial on the remaining counts on May 9, 2011. The jury found Bigsby guilty of one count each of Rape, Strangulation, and Battery. He was also adjudicated a habitual offender.

On May 25, 2011, the trial court sentenced Bigsby to thirty years for Rape, two years

[4] Ind. Code § 35-42-3-3.
[5] Ind. Code § 35-45-2-5.
[6] Ind. Code § 35-46-1-15.1.
[7] Ind. Code § 35-44-3-3.

for Strangulation, 180 days for Battery, 180 days for Invasion of Privacy, two years for felony Resisting Law Enforcement, and 180 days for misdemeanor Resisting Law Enforcement. The sentence for Rape was enhanced by thirty years, due to Bigsby's status as a habitual offender. The trial court ordered that all the sentences, other than that for Invasion of Privacy, be served consecutively, providing for an aggregate sentence of sixty-five years. This appeal ensued.

**Discussion and Decision**

I. Sufficiency of the Evidence of Rape

The State charged Bigsby with committing Rape, as defined in Indiana Code Section 35-42-4-1(a)(1) - (b)(1). Pursuant to subsection (a), a person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when the other person is compelled by force or imminent threat of force commits Rape as a Class B felony. Pursuant to subsection (b), the offense is a Class A felony if it is committed by using or threatening the use of deadly force.

Bigsby contends there is insufficient evidence to support his Rape conviction. Specifically, he challenges the element of compulsion by force or threat of force, claiming that all arguments and physical violence had ceased before any act of sexual intercourse involving him and V.S. took place.

"[I]t is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined." Tobias v. State, 666 N.E.2d 68, 72 (Ind. 1996). The subjective test looks to the victim's perception of the circumstances

5

surrounding the incident and thus the issue for the factfinder is whether the victim "perceived the aggressor's force or imminent threat of force as compelling her compliance." Id.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and the reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). In so doing, we do not assess witness credibility or reweigh the evidence. Id. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id.

In her testimony, V.S. specifically denied that she consented to sexual intercourse with Bigsby at the time in question.[8] She also testified to the following circumstances. Bigsby placed a knife in the frame of the apartment's front door to keep the door from freely opening. He took knives and a boxcutter into the bedroom, where he held one knife to V.S.'s throat and threatened to kill her. Bigsby beat, choked, and repeatedly threatened V.S. He interrogated her about another man, insisting that V.S. had engaged in sexual activity with the man and should do so with Bigsby. Bigsby pulled V.S.'s pajama pants down, V.S. pulled them back up, and Bigsby pulled them down again. They wrestled until V.S., beaten and exhausted, stopped struggling. While Bigsby engaged V.S. in sexual intercourse, there were knives within his reach, lying on the table at Bigsby's side of the bed. There is sufficient evidence to enable the jury to find that the element of compulsion by force or threat of force

---

[8] Evidence that a victim did not voluntarily consent to being touched does not, in itself, support the conclusion that a defendant compelled the victim to submit to the touching by force or threat of force. Smith v. State, 678 N.E.2d 1152, 1155 (Ind. Ct. App. 1997), trans. denied.

was proven beyond a reasonable doubt.

## II. Double Jeopardy

Alleging that the Double Jeopardy prohibitions of the Indiana Constitution[9] are violated by his convictions for Strangulation and Rape as a Class A felony, Bigsby seeks to have his conviction for Strangulation vacated. According to Bigsby, the same evidence supported his Strangulation conviction and also the finding of deadly force used to elevate Rape to a Class A felony.

Article I, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Richardson v. State, 717 N.E.2d 32 (Ind. 1999), explained that two offenses are the same offense if the statutory elements of the crimes are the same or the actual evidence used to convict is the same. The statutory elements analysis is the Blockburger test, conceded to be inapplicable in this case. Goldsberry v. State, 821 N.E.2d 447, 459 (Ind. Ct. App. 2005). The actual evidence test addresses evidence presented at trial to determine whether separate and distinct facts were presented as to each offense. Id. There must be more than a remote or speculative possibility that the same facts were used. Id.

The actual evidence test is not merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the

---

[9] Under the federal constitution, two or more offenses are not the same offense if each statutory offense requires proof of an additional fact which the other does not. Blockburger v. United States, 284 U.S. 299, 304 (1932). Bigsby specifically concedes that his multiple convictions pass the Blockburger test and that there is no federal Double Jeopardy violation.

essential elements of a second challenged offense. Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002). Under the Richardson actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. Id.

The State alleged that Bigsby raped V.S. "on or about November 13, 2010" and further alleged that the offense was accomplished by the use of deadly force or threat of deadly force, elevating the offense to a Class A felony. See Ind. Code § 35-42-4-1; App. 38. The State also alleged that Bigsby committed Strangulation "on or about November 13, 2010," by applying pressure to V.S.'s throat or neck or obstructing her nose or mouth. See Ind. Code § 35-42-2-9; App. 39.

Bigsby asserts that the prosecutor in closing argument invited the jury to rely upon the evidence of strangulation to find that V.S. submitted to sexual intercourse as a result of force. Where one conviction is elevated based upon the same behavior that forms the basis of another conviction, the two cannot stand. See Strong v. State, 870 N.E.2d 442, 443 (Ind. 2007). To remedy a double jeopardy violation, a court may reduce the sentencing classification on one of the offending convictions. Id.

Here, however, the State presented evidence of several uses of force and threats of force. There is evidence that, during the events of November 13 and 14, 2010, Bigsby struck V.S. repeatedly, thrice choked her, touched a knife to her throat, placed knives nearby, and uttered numerous threats to kill V.S.

8

With regard to the deadly force or threat of deadly force relative to the rape charge, the State in closing mentioned strangulation. The prosecutor argued that the crime of Strangulation had been proven by evidence that Bigsby "put his thumbs on [V.S.'s] esophagus and applied pressure to a point where she almost lost consciousness." (Tr. 518.) However, the State also pointed to evidence that Bigsby threatened "the only way we are leaving here is in a body bag" and "Bitch, I'll kill you." (Tr. 513, 520.) Additionally, there was closing argument reference to Bigsby's holding of a knife to V.S.'s throat and his access to multiple knives brought into the bedroom. The argument invited the jury to consider V.S.'s testimony of multiple threats and displays of force.

Furthermore, V.S. testified to three instances of choking, such that there are discrete evidentiary facts to support the Strangulation conviction and the elevation of the Rape charge. V.S. testified that Bigsby choked her until she "blacked out," after the choking and beating she went to the bathroom, when she returned, Bigsby "again pushed and choked" her, placed her in a headlock, and twisted her neck. (Tr. 164.) (emphasis added.) She also testified that, on the next day, there was "more smacking and choking." (Tr. 175.) As at least three instances of choking were described, we find no reasonable possibility that the same evidence was used to establish the elements of Strangulation and also to elevate the Rape offense. Bigsby's convictions for both Strangulation, as a Class D felony, and Rape, as a Class A felony, do not violate the Double Jeopardy provisions of the Indiana Constitution.

### III. Evidentiary Rulings

Finally, Bigsby contends that the evidentiary rulings of the trial court deprived him of

9

a fair trial. In particular, he challenges the admission of testimony that V.S. had obtained a protective order against him, a portion of V.S.'s 9-1-1 call where she referred to Bigsby's inclusion on a no-trespass list at her apartment complex, and portions of a jail-recorded telephone call that Bigsby made to his mother. He also challenges the exclusion of a telephone call between him and V.S. in which she claimed to be pregnant by another man.

The decision to admit evidence is within the sound discretion of the trial court and is afforded great deference on appeal. Bacher v. State, 686 N.E.2d 791, 793 (Ind. 1997). Generally, the admission or exclusion of evidence will not result in a reversal on appeal absent a manifest abuse of discretion that results in a denial of a fair trial. Dorsey v. State, 802 N.E.2d 991, 993 (Ind. Ct. App. 2004).

Protective Order – Testimony and Exhibit. During V.S.'s testimony, the prosecutor asked whether V.S. had "found it necessary" to file for an order of protection against Bigsby. (Tr. 143). Over Bigsby's objection, V.S. was allowed to respond affirmatively and the State was permitted to introduce the signed order as an evidentiary exhibit.[10] Bigsby argues that this evidence was prohibited by Indiana Evidence Rule 404(b) and was irrelevant.

Evidence Rule 404(b) bars the admission of evidence of crimes, wrongs or other bad acts allegedly committed by the defendant to prove the defendant's character, and forbids the use of this kind of evidence to show that the defendant acted in a manner consistent with that

---

[10] The trial court ruled in limine that the petition requesting the protective order would be excluded from evidence.

character. The protective order did not recite any particular act committed by Bigsby, and the petition for the protective order was excluded so that the jury was not so informed.

Nonetheless, according to Bigsby, the language of the protective order – that he be restrained from committing further acts of abuse or threats of abuse against the protected person – "labeled him as domestically violent." Appellant's Brief at 16. Although the order would certainly indicate that Bigsby had performed some abusive act in the past, we observe that, where a relationship between parties has been characterized by frequent conflict, evidence of the defendant's prior assaults and confrontations with the victim may be admissible to show relationship between the parties and motive. See, e.g., Iqbal v. State, 805 N.E.2d 401, 408 (Ind. Ct. App. 2004) (evidence tending to show the hostile relationship was properly admitted). Too, "evidence of uncharged misconduct which is probative of the defendant's motive and which is inextricably bound up with the charged crime is properly admissible under [Evidence Rule] 404(b)." Willingham v. State, 794 N.E.2d 1110, 1116 (Ind. Ct. App. 2003) (internal quotations omitted). Bigsby has not persuaded us that evidence was admitted in contravention of Evidence Rule 404(b).

Bigsby further claims that the protective order was based upon conduct so remote in time (six months prior) as to be irrelevant. Pursuant to Indiana Evidence Rule 401, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Indiana Evidence Rule 403 provides:

11

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

All evidence that is relevant to a criminal prosecution is inherently prejudicial, and thus the Evidence Rule 403 inquiry boils down to a balance of the probative value of the proffered evidence against the likely unfair prejudicial impact of that evidence. Carter v. State, 766 N.E.2d 377, 382 (Ind. 2002) (citing Richmond v. State, 685 N.E.2d 54, 55-56 (Ind. 1997)). "When determining the likely unfair prejudicial impact, courts will look for the dangers that the jury will (1) substantially overestimate the value of the evidence or (2) that the evidence will arouse or inflame the passions or sympathies of the jury." Id. (citing Evans v. State, 643 N.E.2d 877, 880 (Ind. 1994)).

Bigsby argues that the "order focused the jury's attention on something that had no bearing on the instant case and certainly confused the issues." Appellant's Brief at 16. However, Bigsby essentially conceded the relevance of the order. By agreement of Bigsby and the State, the following stipulation was read to the jury at the close of the State's case-in-chief:

> [P]rior to the commencement of trial, Nick Bigsby was found guilty to [sic] the following crimes, to read as follows:  Count Ten, invasion of privacy, a Class A misdemeanor.  Nick Bigsby, on or about or between November 13, 2010, and November 15, 2010, did knowingly violate an order of protection, that is: a protective order issued to prevent domestic or family violence issued under Indiana Code 34-26-5, which was issued to protect [V.S.], and furthermore, did so by engaging in the following conduct:  Nick Bigsby went to and went inside of [V.S.]'s residence.

12

(Tr. 511.) Accordingly, the evidence Bigsby now deems irrelevant and unduly prejudicial – the existence of the protective order – was also placed before the jury by stipulation. He may not predicate reversible error on this basis.

Jail Call with Pregnancy Reference. Bigsby claims that the trial court abused its discretion by excluding from evidence a portion of a jail-recorded telephone call wherein V.S. allegedly made a false claim to Bigsby that she was pregnant by another man. Defense counsel argued for the admission of the evidence:

> It goes to our theory of our defense to and his Constitutional right to present a defense as to the fact that she is continually trying to bait him and anger him and lie to him. So we find it to be relevant and also [it] goes to our defense.

(Tr. 51.)[11] On appeal, Bigsby cites Manigault v. State, 881 N.E.2d 679, 690 (Ind. Ct. App. 2008) for the proposition that "the right to present a defense is a fundamental element of due process of law." It is true that a defendant has a right to present relevant evidence offered to challenge the charges against him. See id. However, Bigsby provides no cogent argument accompanied by relevant authority to suggest that evidence of verbal taunts – true or untrue – can provide a defense to Rape, Strangulation, or Battery. The trial court properly excluded evidence that V.S. claimed to be pregnant, as it lacked relevance to an issue to be resolved by the jury.

Jail Call to Bigsby's Mother. The State offered into evidence a recording of a

---

[11] Subsequently, defense counsel argued that the pregnancy claim was relevant as evidence of V.S.'s "bias" against Bigsby. (Tr. 120.) We are not persuaded that Bigsby was deprived of a fair opportunity to have the jury learn of V.S.'s "bias." It was no doubt readily apparent to the jury that V.S.'s objective was directly in opposition to Bigsby's, as she had accused him of committing several felonies against her and was fully cooperating in his prosecution.

13

telephone call in which Bigsby coached his mother to call V.S. and encourage her not to come to court to testify against him. Bigsby objected that the recording had not been sufficiently redacted to eliminate extraneous, irrelevant information relayed during the call.

Bigsby specifically identifies the following conversation content as irrelevant: Bigsby had cursed a police officer who tried to obtain a hair sample for DNA testing although Bigsby had already submitted to oral and penile swabs; Bigsby expected to be paid for helping other jail inmates with legal research; Bigsby believed that he should be discharged in the instant case; Bigsby desired to have an acquaintance in the jail moved closer to him; Bigsby asked his mother about the length of a sentence given to a person named "Chucky"; and Bigsby referenced pending lawsuits. He argues that the cumulative references portray him "as a hot-head who has criminals for friends and who is entrenched in the legal system outside of this case." Appellant's Brief at 20.

We are inclined to agree with Bigsby that irrelevant material is contained in the recording; however, not all irrelevant evidence is prejudicial. Moreover, no error in the admission or the exclusion of evidence is grounds for reversal on appeal "unless refusal to take such action appears to the court inconsistent with substantial justice." Ind. Trial Rule 61. Here, the potential for prejudice arising from the jury learning that Bigsby was in jail was lessened when the trial court admonished the jury that Bigsby's incarceration was not evidence of his guilt on the pending charges. Moreover, Detective Rick Burkhardt had previously testified without objection that he had attempted to obtain a hair sample from Bigsby and had been unable to do so because Bigsby had refused. In sum, Bigsby has not

14

demonstrated that he suffered prejudice to his substantial rights.

9-1-1 Call Reference to No Trespass List. The State introduced into evidence a recording of V.S.'s 9-1-1 call placed from her apartment manager's cellular phone. V.S. advised the 9-1-1 operator that Bigsby was included on the apartment complex's no-trespassing list. He now claims that this information "further cast him in a bad light in the minds of the jurors." Appellant's Brief at 21. The factfinder could reasonably anticipate that, if Bigsby was court-ordered to stay away from V.S., he was not allowed at the apartment complex where she lived. The information that Bigsby was banned from the apartment complex was essentially cumulative of the evidence that he was subject to a no-contact order. Again, he has not demonstrated prejudice to his substantial rights.

**Conclusion**

There is sufficient evidence to support Bigsby's conviction for Rape, as a Class A felony. His convictions for Strangulation and Rape, as a Class A felony, do not violate the Double Jeopardy provisions of the Indiana Constitution. Finally, the evidentiary rulings of the trial court did not deprive Bigsby of a fair trial.

Affirmed.

BAKER, J., and DARDEN, J., concur.