# FOR PUBLICATION



**FILED**

Sep 23 2013, 5:35 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**DEIDRE R. ELTZROTH**
Assistant Chief Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ANTROOINE A. MANNING, JR.,           )
                                     )
    Appellant-Petitioner,        )
                                     )
       vs.                    )    No. 45A05-1302-PC-83
                                     )
STATE OF INDIANA,                    )
                                     )
    Appellee-Respondent.         )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
The Honorable Natalie Bokota, Magistrate
Cause No. 45G01-1203-PC-4

**September 23, 2013**

**OPINION - FOR PUBLICATION**

**DARDEN, Senior Judge**

Antrooine Manning, Jr., appeals the denial of his petition for post-conviction

relief. We affirm.

ISSUE

Manning raises several issues, which we consolidate and restate as whether the

post-conviction court erred by denying relief.

FACTS AND PROCEDURAL HISTORY

The underlying facts of this case, taken from this Court's memorandum decision

in Manning's direct appeal, are as follows:

> At approximately 1:00 p.m. on May 29, 2009, Cheryl Blondeel took a break from her job at Fresenius Munster Dialysis in Munster. She walked to the parking lot and telephoned her husband on her cell phone. While she was talking on the phone, thirty-three-year-old Manning approached her and attempted to take her purse. Blondeel struggled with Manning over the purse. When the purse strap broke, Manning grabbed the purse and took off running. Blondeel pursued Manning and saw him get into the passenger seat of a white car parked in a nearby driveway. The car was driven by Manning's girlfriend, twenty-two-year-old Domi[ni]que Wood[s]. (State's Exhibit 45).
>
> Blondeel wanted to reach into the car to get her purse before Wood[s] drove away, but the window was rolled up. Instead, Blondeel threw herself across the hood of the car. Woods put the car in reverse, rapidly backed out of the driveway with Blondeel still on the hood, and slammed on the brakes. Woods continued to accelerate, swerve, and brake until Blondeel was thrown from the hood of the car. As a result of being thrown from the car's hood, Blondeel scraped her chin and knees, bit the inside of her mouth, and had road rash and several bruises.
>
> Gary Diederich, a Munster Fire Department employee, witnessed Blondeel's attempt to stop the white vehicle and stopped to assist her. Diederich observed the car's license plate number and called 911 to report the crime. Police officers and an ambulance arrived at the scene, and Blondeel gave a statement to the officers.
>
> Shortly thereafter, Munster Police Department Officer Kevin Cooley observed the white vehicle. Officer Cooley radioed for assistance and

followed the car. When other officers arrived, Officer Cooley activated his emergency lights and siren, and initiated a traffic stop at the traffic light where the white vehicle had stopped. [Officer Tricia Fichter] parked her vehicle near the front driver's side of the white vehicle. Both officers ordered Manning and Woods to exit the vehicle. Manning told Woods to "take off," and Woods accelerated the vehicle. State's Exhibit 45. In response, Officer Cooley fired two shots at the vehicle's rear tire, and Woods stopped.

Woods and Manning were both arrested. Manning gave a police statement wherein he explained that he decided to rob Blondeel because "she was gullible and wasn't paying attention." State's Exhibit 45. Manning admitted taking Blondeel's purse and telling Woods to "take off" when the police stopped them. State's Exhibit 45.

*Manning v. State*, No. 45A03-1002-CR-65, slip op. at 2-3 (Ind. Ct. App. Oct. 20, 2010),

*trans. denied*. The State charged Manning with Class B felony robbery, Class C felony

robbery, Class C felony battery, Class D felony resisting law enforcement, and being a

habitual offender.

The charge relevant to our consideration here, that of resisting law enforcement,

was alleged to have been committed by fleeing with the use of a vehicle. *See* Direct

Appeal Amended App. p. 24;[1] Ind. Code § 35-44-3-3 (2006) (enhancing resisting law

enforcement by fleeing to a Class D felony if the person uses a vehicle to commit the

offense) (currently codified at Ind. Code § 35-44.1-3-1 (2013)). The State proceeded on

a theory of accomplice liability for that charge at Manning's jury trial.

---

[1] The records of the proceedings in the direct appeals of both Manning and Woods were admitted into evidence at the post-conviction hearing and transmitted to us for this appeal. All record citations in this opinion refer to Manning's proceedings.

3

Video footage of the alleged fleeing, one taken from Officer Cooley's vehicle and another taken from Officer Fichter's vehicle, was admitted and viewed by the jury.[2] That footage showed that Woods's car was initially boxed in at a traffic light by other vehicles and police cars with their sirens and emergency lights activated. Woods first moved the car closer to the vehicle stopped in front of her. Despite officers yelling at her with their guns drawn, she then rolled the car forward as traffic began to proceed. Officer Cooley shot at the driver's side rear tire, and Woods stopped the car several feet from where it began. She then moved forward one more time before Officer Cooley opened her door and ordered her out of the car.

Also admitted into evidence was Manning's statement to the police, in which he said, "We were stopped in traffic and we saw the police around us. We had the evidence right in front of us in the car, so I told [Woods] to take off." State's Trial Ex. 45, p. 2.

Manning's trial counsel moved for a directed verdict, arguing that Woods had total control of the vehicle and that any resisting was thus attributable only to her. The trial court denied the motion, noting Manning's statement that he instructed Woods to "take off." Trial Tr. pp. 295-96.

The jury found Manning guilty as charged, and he pleaded guilty to being a habitual offender. The trial court entered judgments of conviction for Class B felony robbery, Class D felony resisting law enforcement, and being a habitual offender. At the

---

[2] The records of the proceedings in the direct appeals of both Manning and Woods indicated that the videos, taken from different angles, were in the custody of the Lake County Superior Court. Manning included only Officer Cooley's video in the Appellant's Appendix. After this appeal was fully briefed, we ordered Officer Fichter's video to be transmitted to us in a supplemental exhibit volume. We have viewed both videos in resolving this appeal.

close of a sentencing hearing, the trial court sentenced Manning to an aggregate term of thirty years: sixteen years for robbery, twelve years for the habitual offender enhancement, and two years for resisting law enforcement.

On appeal, Manning's counsel argued that the trial court erred in refusing to give a tendered jury instruction, that the evidence was insufficient to support the robbery and resisting law enforcement convictions, and that the manner in which the trial court imposed the habitual offender enhancement was improper. As to the resisting law enforcement conviction, appellate counsel argued that the evidence was insufficient because Manning was not driving the car. This Court found the evidence sufficient to convict Manning as an accomplice, noting that he was in the car with his girlfriend Woods and that he told her to "take off" when officers ordered her to stop. *Manning*, slip op. at 10. Finding no error, we affirmed his convictions and sentence.

In May 2011, four months after the opinion in Manning's direct appeal was certified, Woods had her jury trial on several charges, including Class D felony resisting law enforcement, for her part in the crimes. As to the resisting charge, the State's evidence was similar to the evidence presented at Manning's trial: Officer Cooley and Officer Fichter yelled at Woods to stop and turn off the car, their commands were ignored, Officer Cooley fired two shots at the driver's side rear tire, and Woods stopped the car. The same two videos played for the jury in Manning's trial were admitted and viewed by the jury in Woods's trial.

Woods's trial counsel moved for a directed verdict on the resisting charge, arguing that the short distance the car rolled forward did not constitute fleeing under the resisting

5

statute. The trial court noted the evidence showed the car's movement, determined that it did not constitute fleeing, and granted the motion.

In March 2012, Manning filed a pro se petition for post-conviction relief. Counsel subsequently appeared on his behalf and amended the petition. The amended petition claimed in relevant part that: (1) trial counsel was ineffective by failing to argue, either to the trial court when seeking a directed verdict or to the jury during closing arguments, that the short distance the car moved did not constitute resisting law enforcement and (2) appellate counsel was ineffective by failing to argue that the evidence was insufficient because the short distance the car moved did not constitute resisting law enforcement.

After a hearing, the post-conviction court determined that Manning's ineffective assistance claims were barred by res judicata and denied the petition. Manning now appeals.

### DISCUSSION AND DECISION

In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Henley*, 881 N.E.2d at 643. The reviewing court will not reverse the judgment unless the petitioner shows that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 643-44. Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). We will

6

reverse a post-conviction court's findings and judgment only upon a showing of clear error, which is that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* at 644. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.*

As an initial matter, the State notes that a challenge to the sufficiency of the evidence to sustain Manning's resisting law enforcement conviction was already raised and decided against him in his direct appeal. Thus, the State continues, because Manning's post-conviction claims are nothing more than a sufficiency argument couched in terms of ineffective assistance, they are barred by res judicata.

When an issue is decided on direct appeal, the doctrine of res judicata generally applies to preclude its review in post-conviction proceedings. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000). The doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute. *Id.* A petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error. *Id.*

However, despite a claim of res judicata, a court may correct an error in its prior holding. *Arthur v. State*, 663 N.E.2d 529, 531 (Ind. 1996). Although a court may revisit a prior decision, it should do so only in extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice. *Id.* We thus

look to the merits of Manning's claims to determine whether they present such an extraordinary circumstance.

Manning contends that trial and appellate counsel were ineffective by failing to argue that the short distance Woods moved the car did not constitute fleeing from law enforcement officers. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

The State sought to prove at trial that Manning was guilty as an accomplice of resisting law enforcement by using a vehicle to "flee[ ] from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop." Ind. Code § 35-44-3-3.

Manning argues there was no evidence of flight by Woods, and thus there could be no resisting on his part as an accomplice. "Flight" in the context of resisting law enforcement is "a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there." *Wellman v. State*, 703 N.E.2d 1061, 1063 (Ind. Ct. App. 1998).

The evidence at Manning's trial included testimony from Officer Fichter, who stated that as she approached the scene, she saw Woods's car stopped at a red light with Officer Cooley's squad car behind her. Woods's car "was just slowly kept [sic] trying to

8

move forward, even though the vehicle in front of it was still stopped for the red light." Trial Tr. p. 133. Officer Fichter and Officer Cooley got out of their vehicles and drew their guns, and Officer Cooley fired two shots toward the street or the tires of Woods's car when Woods failed to comply with orders to turn the car off.

Officer Cooley testified that he pulled up behind Woods's car at a traffic light, exited his car, and ordered Woods to stop and turn off the car. Woods did not comply, and as traffic began to proceed, Woods's car "started to proceed" as well. *Id.* at 160. Upon seeing the car start to move forward, he fired two shots at the driver's side rear tire. Woods stopped the car.

Additionally, videos of the incident, admitted and viewed by the jury, showed police cars with their sirens and lights activated both behind and at the front left side of Woods's car. As officers were getting out of their vehicles, Woods's car moved closer to the vehicle stopped in front of her. Ignoring officers yelling at her with their guns drawn, she then rolled the car forward as traffic began to proceed. Woods stopped the car only when Officer Cooley shot at the driver's side rear tire, then moved forward one more time before Officer Cooley opened her door and ordered her out of the car.

This evidence was sufficient for a jury to determine that Woods knowingly, with the behest and/or encouragement of Manning, attempted to escape law enforcement while being aware of officers' commands for her to stop and that she thus fled within the context of the resisting law enforcement statute. *See, e.g.*, *Jones v. State*, 938 N.E.2d 1248, 1251, 1253 (Ind. Ct. App. 2010) (evidence of flight sufficient where officers ordered defendant to stop, but defendant put car in reverse, accelerated, and crashed into

marked police car); *Woodward v. State*, 770 N.E.2d 897, 901-02 (Ind. Ct. App. 2002) (evidence of flight sufficient where officer activated lights and sirens to pull over defendant, but defendant continued driving and did not stop until he reached his apartment approximately a mile away), *trans. denied*.

As the evidence also included Manning's statement to the police that he told Woods to "take off" when they saw the police around them, State's Ex. 45, p. 2, we agree with the opinion in Manning's direct appeal that the evidence was likewise sufficient to show he resisted law enforcement as an accomplice. *See Manning*, slip op. at 10 (citing *Jones v. State*, 536 N.E.2d 267, 271 (Ind. 1989) (evidence sufficient to support defendant's resisting conviction where he was passenger in car that fled from police and where he told driver not to stop)).

Manning nonetheless argues that the trial court's grant of Woods's motion for a directed verdict on the resisting charge in her trial somehow requires Manning's resisting conviction to be vacated. *See* Appellant's Br. p. 7 ("Manning's resisting arrest conviction fails because the offense alleged to have been committed by the principal was determined to have never occurred."). However, the accomplice liability statute provides:

> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:
> (1) has not been prosecuted for the offense;
> (2) has not been convicted of the offense; or
> (3) has been acquitted of the offense.

Ind. Code § 35-41-2-4 (1977). Thus, the resolution of Woods's resisting charge is irrelevant to whether Manning may be convicted of resisting as an accomplice. Instead, what is important is the evidence presented in Manning's trial. That evidence was

10

sufficient for a jury to determine that Woods committed the offense of resisting law enforcement and that Manning knowingly or intentionally aided, induced, or caused her to do so.

Because the evidence was sufficient to convict Manning of resisting as an accomplice, trial and appellate counsel did not perform deficiently by failing to argue that the short distance Woods moved the car did not constitute fleeing from law enforcement officers. Moreover, had they made such an argument, there is not a reasonable probability that the result would be different.[3] Manning has thus failed to show that he received ineffective assistance of counsel.

Manning's post-conviction claims do not provide any basis for relief, much less present an extraordinary circumstance such as where this Court's decision in his direct appeal was clearly erroneous and would work a manifest injustice. The post-conviction court therefore properly found his claims barred by res judicata.

## CONCLUSION

We affirm the post-conviction court's denial of relief.

Affirmed.

BAKER, J., and CRONE, J., concur.

---

[3] Manning states that "[i]t is reasonably probable to assume that the same court, faced with the same argument, would have reached the same conclusion in Manning's case as it reached in Woods'." Appellant's Reply Br. p. 3. Although the trials were held in the same courtroom, we note that Woods's trial was before Judge Salvador Vasquez while Manning's trial was before Judge Pro Tempore Susan Severtson.